James M. CHASE, Petitioner,

v.

Ray H. PAGE, Warden, Oklahoma State Penitentiary and the State of Oklahoma, Respondents.

No. A–14729.

Court of Criminal Appeals of Oklahoma.
June 18, 1969.

James M. Chase, pro se.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for respondents.

PER CURIAM:

This is an original proceeding in which petitioner, James M. Chase, seeks a writ of habeas corpus to release him from his present incarceration in the state penitentiary resulting from a revoked parole. The primary issues raised in this proceeding are: (1) did the petitioner, while on parole, voluntarily return to imprisonment and is

he thus entitled to credit for the time spent on parole as a deduction from his total term of imprisonment under 57 O.S.1961, § 350; and, (2) does constitutional due process of law require a full judicial hearing prior to the revocation of a parole.

## I

Petitioner was originally incarcerated in the penitentiary on December 31, 1961, by authority of judgment and sentence imposed in the District Court of Comanche County, Oklahoma, sentencing him to a term of fifteen years imprisonment for manslaughter in the first degree. The conviction was affirmed on appeal. Chase v. State, Okl.Cr., 382 P.2d 457 (1963), certiorari denied 375 U.S. 979, 84 S.Ct. 500, 11 L.Ed.2d 424.

On April 3, 1965, petitioner was paroled and permitted to work and reside in the District of Columbia. Subsequently, an affidavit in support of arrest warrant was made out against petitioner on August 11, 1966, alleging that on August 3, 1966, the Oklahoma Pardon and Parole Board issued a warrant charging petitioner with violation of his parole. Petitioner was taken into custody by District of Columbia authorities who released him to an agent of the Oklahoma Bureau of Investigation for transportation back to the Oklahoma State Penitentiary where he has remained since September 12, 1966.

From a review of the facts we cannot accept the contention that petitioner voluntarily returned to confinement in the penitentiary and that he is therefore entitled to a deduction from his term of imprisonment for all time during which he was free on parole. 57 O.S.1961, § 350, provides as follows:

"Every person (hereinafter referred to as 'convict') who has been or who in the future may be sentenced to imprisonment in any State penal institution shall, in addition to any other deductions provided for by law, be entitled to a deduction from his sentence for all time during which he has been or may be on parole; provided, however, that this Act shall not be applicable to time on a parole which has been or shall be revoked; and further provided, that voluntary return to confinement shall not be deemed to be a revoked parole."

In the instant case it is apparent that petitioner's parole was revoked by the Governor and his return to confinement in the penitentiary was pursuant to such revocation. A Governor's revocation of a convict's parole cancels credit for good time for the entire period while he was on leave. Simpson v. Page, Okl.Cr., 416 P.2d 635 (1966). Pappan v. Page, Okl.Cr., 422 P.2d 470 (1967).

## II

Petitioner's second contention is that revocation of a parole must comply with the full requirements of due process of law including notice, full hearing, assistance of counsel, and confrontation of witnesses. Basically, Oklahoma has taken the view that parole is a matter of grace. Title 57 O.S.1961, § 346, provides:

"If a paroled convict shall at any time be guilty of a violation of any of the conditions of his parole, he may, upon the order of the Governor, be re-arrested and recommitted, without further proceedings, to confinement for the remainder of, and under the terms of, his original sentence."

In view of this statute this Court held in the fifth and sixth paragraphs of its syllabus in Wright v. Page, Okl.Cr., 414 P.2d 570 (1966), that:

"A prisoner released on parole by the State of Oklahoma remains theoretically a prisoner of the State, while he continues to be free under the terms and conditions of that parole."

"Governor could revoke prisoner's parole without notice or hearing." 414 P.2d, at 571.

Many jurisdictions afford the opportunity for a hearing before a parole is revoked. Many of these jurisdictions afford such a

hearing pursuant to statutory authorization, as is the case in federal jurisdiction, while others afford such a hearing as a requirement of the courts. For example, the state courts in both Minnesota and Utah require a hearing in the absence of a statutory requirement for such. State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N.W. 1065 (1893). State v. Zolantakis, 70 Utah 296, 259 P. 1044, 54 A.L.R. 1463 (1927).

At the same time, most jurisdictions have rejected the idea that constitutional due process requires that a parolee be afforded a court hearing with full procedural guarantees prior to a revocation of his parole. In Williams v. Dunbar, 377 F.2d 505 (9th Cir. 1967), the United States Court of Appeals held:

"His claim is that constitutional due process would have required that he be afforded a court hearing, with the rights to be represented by counsel, to confront and cross-examine witnesses and to have process to summon witnesses to support his denial of violation of parole.

* * * The appellant's contention has been tested in many litigated cases and has always been rejected. Citations." 377 F.2d, at 506.

A recent decision of the Utah Supreme Court dealing with probation revocation, Velasquez v. Pratt, 21 Utah 2d 229, 443 P. 2d 1020 (1968), held:

" * * * when a person has been found guilty of an offense and sentenced, he is in quite a different status than he is before conviction * * *. He is certainly not entitled to all of the protections accorded one accused of crime in the first instance * * *.

Notwithstanding what we have just said, it is our opinion that justice requires that a person on probation should not be compelled to live in dread of being recommitted on the whim or caprice of a probation officer, or even of a court. Ordinary principles of fair play demand that he should be advised of the ground upon

which revocation of probation is sought, and to have a hearing on whether his probation should be revoked * * *." 443 P.2d, at 1021.

We further note the holding of the United States Court of Appeals in Fleenor v. Hammond, 116 F.2d 982 (6th Cir. 1941), which involved the revocation of a parole granted to a state prisoner:

" * * * It does not follow, however, from the reservation of a right to revoke, that it may be exercised arbitrarily or upon whim, caprice, or rumor. Upon the granting of a pardon, albeit conditionally, the convict was entitled to his liberty and possessed of a right which could be forfeited only by reason of a breach of the conditions of the grant. * * *"

* * * * * *

"It is our conclusion that the petitioner's right to his freedom under the terms of the pardon could not be revoked without such hearing as is the generally accepted prerequisite of due process, if the exercise of such power by the Governor is challenged by unequivocal allegations that the petitioner has complied with the conditions of the grant. This does not mean that he is entitled to a trial in court, or a trial in any strict or formal sense. Due process is satisfied if there is reasonable opportunity extended to Fleenor to explain away accusation that he has violated the conditions upon which his pardon was granted. As was said in Escoe v. Zerbst [295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566] supra, the 'inquiry should be so fitted in its range to the needs of the occasion.'" 116 F.2d, at 986.

In another recent decision the court in Hutchison v. Patterson, 267 F.Supp. 433 (Colorado 1967), held:

"In essence, petitioner complains that he was denied counsel at the hearing and was not confronted with witnesses against him. It may be that the law in this respect will change. We note the decision of the United States Supreme Court made recently to review two Wash-

ington State cases involving revocation of probation. See Mempa v. Rhay, 386 U.S. 907, 87 S.Ct. 849, 17 L.Ed.2d 781 and Walkling v. Rhay, 386 U.S. 907, 87 S.Ct. 852, 17 L.Ed.2d 781." 267 F.Supp., at 434.

\*   \*   \*   \*   \*   \*

"While the petitioner's liberty cannot be terminated without reason, it does not follow that he is entitled to all of the constitutional procedures and safeguards guaranteed by the due process clause of the Fourteenth Amendment." 267 F. Supp., at 434.

Thus, while many jurisdictions have recognized that constitutional due process does not require a judicial determination with procedural safeguards to revoke a parole, a parolee should not be returned to custody without reason or sufficient showing to justify such recommitment. In Belveal v. Bray, 253 F.Supp. 606 (Colorado 1966), the court held:

"While parole is clearly a privilege under Colorado law, the Board is authorized to act only in specified ways."

In State ex rel. Murray v. Swenson, 196 Md. 222, 76 A.2d 150 (1950), the court held where a conditional pardon was revoked on the unsubstantiated complaint of one person without an opportunity for the parolee to be heard, that such revocation contravenes the fundamental principles of justice in depriving the petitioner of his liberty. The Maryland court stated:

"\* \* \* the fact that the Governor can impose conditions upon the pardon and reserve the right to revoke it does not authorize him to exercise the right of revocation arbitrarily or solely upon rumor. When a convict is granted a conditional pardon, he possesses a very valuable right, the right to liberty." 76 A.2d, at 154.

In United States ex rel. Obler v. Kenton, 262 F.Supp. 205 (Conn.1967), the court acknowledged the dire consequences which face a parole violator returned to prison and held that a hearing should be conducted before a parolee was returned to imprisonment to "determine whether in fact there has been a transgression [of the conditions of the parole]." The court stated:

"Thus the procedural safeguards afforded the alleged parole violator are premised, not on due process, but on the provisions of the parole statutes, the 'needs of the occasion' and notions of fair play." 262 F.Supp., at 208.

### III

Title 57 O.S.Supp.1968, § 516, provides that a probation-parole officer, upon information sufficient to believe the terms of a parole have been violated, shall notify the Deputy Director of the Division of Probation and Parole of the Department of Corrections. If he believes the facts justify, said Deputy shall issue a warrant for the arrest of the parolee. Upon his arrest the parolee is to be incarcerated in the nearest county jail "to await action of the Governor as to revocation of his parole." Title 57 O.S.1961, § 346, provides that if a parolee is guilty of violating a condition of his parole the Governor may order his recommitment, without further proceedings, for the remainder of the original sentence.

■■ The recommitment, without further proceeding, of a parolee for the remainder of his sentence is conditioned upon a determination or finding that the terms of the parole have in fact been violated. Before such a determination or finding can be made it appears that the principles of fundamental justice and fairness would afford the parolee a reasonable opportunity to explain away the accusation of a parole violation. It does not follow from the reservation of a right to revoke a parole that it may be exercised arbitrarily or upon whim, caprice, or rumor. Upon the granting of a parole, the convict is entitled to a conditional liberty and possessed of a right which can be forfeited only by reason of a breach of the conditions of the grant.

We observe also that the last session of the Legislature enacted House Bill 1052,

O.S.L.1969, Ch. 57, pa. 58 (22 O.S.Supp. 1969, § 991b), which requires a hearing and the submission of competent evidence before a suspended sentence can be revoked. This statute expressly grants a person at such a hearing the right to counsel, to present evidence, and to confront witnesses against him. While we do not presume to imply that this statute is applicable to paroles, it does indicate the intention of the Legislature to provide for notions of fair play in matters of terminating conditional freedom.

We therefore conclude that a parolee's conditional freedom should be safeguarded by the provisions of the parole statutes, the needs of the occasion, and ordinary principles of justice and fairness. Thus, in the future, before a parole is revoked and the parolee recommitted for the remainder of his sentence, he should be advised of the ground upon which revocation is sought and afforded a reasonable opportunity for a hearing on whether the conditions of the parole were in fact violated. This does not mean that a parolee is entitled to a trial in court, with all the constitutional procedures and safeguards guaranteed by due process. It is sufficient if the parolee is extended the opportunity to explain away the accusation of a violation of the conditions of the parole at an administrative hearing before an impartial officer before issuance of an order of parole revocation. Nor is it mandatory that a hearing always be held before a parole is revoked, as the circumstances in certain cases may clearly indicate the breach of a parole condition, without the necessity of a hearing. The rule announced in this decision is prospective in application.

After a thorough review of the record in the instant case, we find that petitioner was denied no right due him at the time he was returned to the penitentiary to complete the remainder of his sentence. Therefore, petitioner is not entitled to any relief under his petition for writ of habeas corpus.

Writ denied.

This application was referred to the Court Referee, Mr. Penn Lerblance, and his findings and conclusions of law as set forth herein, after careful consideration, have been adopted by the Court.