STATE EX REL. JOHNSON, Petitioner, v. CADY, Warden, Respondent. [Case No. State 143.] *
STATE EX REL. BROCK, Petitioner, v. CADY, Warden, Respondent. [Case No. State 144.] *
STATE EX REL. MROTEK, Petitioner, v. CADY, Warden, Respondent. [Case No. State 145.] *

*Nos. State 143–145. Argued February 4, 1971.—Decided April 2, 1971.*
(Also reported in 185 N. W. 2d 306.)

---

* Motions for rehearing denied, without costs, on June 2, 1971.

For the petitioners there was a brief and oral argument by *James H. McDermott,* state public defender.

For the respondent the cause was argued by *William A. Platz* and *Mary V. Bowman,* assistant attorneys general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The principal issues presented are:

1. Petitioners' right to a hearing at revocation.

2. Equal protection, in that a different procedure is provided for probation revocation in Milwaukee county than the remainder of the state.

3. If petitioner has a right to a hearing, does he also have a right to counsel?

4. Retroactivity.

For the resolution of the issues here presented, we find no substantial difference between the three situations presented, *i.e.*, revocation of parole of a prisoner released on mandatory parole, discretionary parole, or a criminal on probation as a result of sentence having been imposed and stayed. In each of the three situations, the petitioners have been convicted and sentence imposed, and they are in the custody and control of the Department of Health & Social Services (H&SS Department).

### *Hearing.*

We start with the proposition that a person once convicted of a crime has no constitutional right to probation [2] or parole. Any rights that one convicted of a crime has to be on probation or parole, are rights which have been created by the legislature. The legislature having enacted laws which make it possible for certain individuals who have been convicted of crimes to be placed either on probation or granted parole, has vested the administration of such matters in the executive branch of the government by directing that the H&SS Department shall administer parole and probation matters.

Sec. 46.03, Stats., **"Department, powers and duties.** The department shall:

---

[2] Probation as used herein refers only to those cases where the defendant has been convicted, sentence imposed by a court and execution thereof stayed, and defendant placed on probation.

" . . . .

"(6) CORRECTIONS. . . .

"(c) Administer parole and probation matters."

Thus the litigation is over and the judicial process terminated when a man, once presumed to be innocent, has been accused of a crime, tried, defended, found guilty, sentenced and, if he wishes, gone through the process of appeal. The adversary system has terminated and the administrative process, vested in the executive branch of the government, directed to the correctional and rehabilitative processes of the parole and probation system has been substituted in its place.

When establishing the probation and parole system, the legislature, except as to Milwaukee county, clearly did not adopt statutes providing for a hearing on the revocation of probation if sentence has previously been imposed and stayed.

Sec. 973.10 (2), Stats. 1969, formerly sec. 57.03 (1), Stats. 1967, provides:

"If a probationer violates the conditions of his probation, the department may order him brought before the court for sentence which shall then be imposed without further stay or if he has already been sentenced, may order him to prison; . . ."

Petitioner challenges this procedure contending that due process requires a hearing as to any proposed revocation of probation.

Also, as to parole revocation, the statutes make no provision for a hearing. Both mandatory release, pursuant to sec. 53.11 (7) (a), Stats., and discretionary parole pursuant to sec. 57.06 (1), may be revoked by order of the department. Sec. 53.11 (7) (b), applicable to mandatory release, provides:

"Any person on parole under this subsection may be returned to prison as provided in s. 57.06 (3) or s. 57.07 (2) to serve the remainder of his sentence."

Sec. 57.06 (3), applicable to discretionary parole, provides:

"Every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department. All prisoners under its custody may be returned to prison at any time, on the order of the department, . . ."

In *Escoe v. Zerbst* (1935), 295 U. S. 490, 55 Sup. Ct. 818, 79 L. Ed. 1566, the petitioner challenged the revocation of his probation without a hearing. The court held that under the applicable federal statute, the petitioner's probation could not be revoked without a hearing, but rejected the petitioner's contention that a hearing was constitutionally required.

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. . . ." *Escoe v. Zerbst, supra,* pages 492, 493.

The conflicting decisions in other jurisdictions, both before and after the decision in *Escoe v. Zerbst, supra,* on whether due process requires a hearing on revocation of probation and parole are discussed in an annotation at 29 A. L. R. 2d 1074.

After review of conflicting authority in other jurisdictions, and consideration of all arguments advanced by respective counsel, we conclude that the basic requirements of due process and fairness require that the department provide a limited hearing to allow petitioners to be confronted with their probation violation and to be heard if they so desire. *Hahn v. Burke* (7th Cir. 1970), 430 Fed. 2d 100.[3] We recognize that legally petitioners are in the custody of the department whether confined

[3] *Marquardt v. Gagnon* (E. D. C. Wis. 1970), order filed September 29, 1970.

in a penal institution or at liberty on either probation or parole. Nevertheless, it cannot be denied that there is a significant distinction between the status and freedom enjoyed by one on probation or parole and one confined in a penal institution. After one has gained the conditional freedom of a probationer or parolee, whether by action of court, parole board, or statute, the state cannot summarily revoke such status without giving petitioner a reasonable opportunity to explain away the accusation that he had violated the conditions of his probation or parole. Upon the granting of probation or parole, the convict is entitled to conditional liberty and is possessed of a right which can be forfeited only by reason of a breach of the conditions of the grant. *Chase v. Page* (Okla. Crim. 1969), 456 Pac. 2d 590, 594. In holding that probationers and parolees are entitled to a hearing, we do not imply that they could not be detained on recommendation of the department where circumstances require and a hearing was not immediately possible. *Hahn v. Burke, supra.*[4]

We do not here attempt to spell out in detail the specific procedural characteristics of the revocation hearings to be held by the department. [The petitioners do not contend, nor do we hold that the purpose of the hearing is to determine whether revocation is justified on the grounds alleged.] * The type of hearing we refer to is a factual hearing relating to the grounds of revoca-

---

[4] The concurring opinion of Mr. Chief Justice HALLOWS states that the majority opinion is premised on the fact that there is no constitutional basis for a hearing on revocation of probation or parole. On the contrary, the majority opinion, in determining that petitioners are entitled to a hearing, does so by deciding that the basic requirements of due process necessitate such a hearing and cites *Hahn v. Burke, supra,* with approval. Furthermore, although the concurring opinion so implies, the majority opinion does not make any distinction between right and privilege in respect to due process.

* Stricken. See memorandum opinion on rehearing, post, p. 565.

tion so that, on review, it can be determined whether the department acted arbitrarily and capriciously in ordering revocation.[5]

In examining authorities in other jurisdictions, it appears there is little uniformity in the cases in discussing the type of hearing required. We are of the opinion that the hearing need not be a formal trial-type hearing and that technical rules of evidence need not be observed.

"A revocation hearing is not a trial in the traditional sense, nor is the board necessarily concerned with the commission of a criminal offense. As a matter of fact, a prisoner having been granted conditional freedom on parole, the primary question before the board is whether within its discretion the parolee is still a good parole risk. . . . By its very nature a revocation hearing does not envision strict observance of technical rules of law and procedure accorded a judicial proceeding. Any relevant information, even though in the form of letters, reports of parole officers, and similar matter, which may aid the board in making its determination, may be considered. . . ." *Johnson v. Stucker* (1969), 203 Kan. 253, 453 Pac. 2d 35, 42, certiorari denied, 396 U. S. 904, 90 Sup. Ct. 218, 24 L. Ed. 2d 180.

*See also: Hyser v. Reed* (D. C. Cir. 1963), 318 Fed. 2d 225.

### *Review.*

Once having determined that petitioners are entitled to revocation hearing, we deem it advisable to consider the right of review of the department's action in revocation. It is well established in this state that where there

---

[5] In *Escoe v. Zerbst, supra,* page 493, reference is made to ". . . an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused." The limited administrative hearing directed is such inquiry as to protect against revocation of probation or parole by arbitrary action or caprice.

are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari.[6]

We, therefore, hold that petitioner's right of review of a revocation hearing is by certiorari directed to the court of conviction. We further conclude that the scope of the review shall be addressed to whether the department's action was arbitrary and capricious and represented its will and not its judgment.

"The board is presumed to have had before it information which warranted the order of revocation, and its determination of the matter is conclusive unless the prisoner can prove by a preponderance of the evidence the board's action was arbitrary and capricious. That burden rests squarely on the prisoner, and if he fails to sustain the burden, the courts will not interfere with the board's decision. . . ." *Johnson v. Stucker, supra,* page 42.

We deem the quotation from the foregoing-cited court decision merits our approval and is applicable to the instant cases.

### *Equal protection.*

Sec. 973.11 (5), Stats., which applies only to counties with a population of more than 500,000, provides: "Probation violators whether sentenced or not, shall be taken before the court for a hearing." It is argued that probationers such as the petitioner Brock, who may have their probation revoked without a hearing, are denied equal protection of the law because the statute provides for a hearing for Milwaukee county probationers only.

[6] *State ex rel. Kaczkowski v. Fire & Police Comm.* (1967), 33 Wis. 2d 488, 501, 148 N. W. 2d 44, 149 N. W. 2d 547; *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 111 N. W. 2d 198; *State ex rel. Gudlin v. Civil Service Comm.* (1965), 27 Wis. 2d 77, 133 N. W. 2d 799; *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 199, 94 N. W. 2d 711.

We here hold that due process requires the department afford a revocation hearing for those probationers not granted a statutory hearing on revocation pursuant to sec. 973.11 (5). While probationers in counties with a population of more than 500,000 are granted a judicial hearing on revocation and all other probationers an administrative hearing, we do not consider that this difference violates the equal protection clause.

Territorial uniformity in the administration of justice has been held not to be a constitutional requisite. In *Missouri v. Lewis* (1879), 101 U. S. 22, 25 L. Ed. 989, the state of Missouri by constitution and statute had established a system of appeal whereby appeals from judgments of the circuit courts for four counties were heard by a separate court of appeals from which appeal to the state supreme court would lie only where the amount in dispute exceeded $2,500, or where the case involved a constitutional question. The judgments of the circuit courts of all other counties could be appealed directly to the state supreme court with no restrictions as to subject matter or amount. The court held that this system did not violate the equal protection clause.

". . . . A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. . . . Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies." *Missouri v. Lewis, supra,* pages 31, 32.

In *Salsburg v. Maryland* (1954), 346 U. S. 545, 74 Sup. Ct. 280, 98 L. Ed. 2d 281, a Maryland statute made a distinction as to the admissibility of certain evidence

on the basis of county areas. The court held that this difference did not violate the equal protection clause.

"We find little substance to appellant's claim that distinctions based on county areas are necessarily so unreasonable as to deprive him of the equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between persons as such rather than between areas. . . .

". . . . Territorial uniformity is not a constitutional requisite. . . ." *Salsburg v. Maryland, supra,* pages 550–552.

These cases establish that differences in procedures based on geographic areas are not per se unconstitutional.

This court has held that equal protection is denied only by irrational and arbitrary classifications. *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673. In *State ex rel. La Follette v. Reuter* (1967), 36 Wis. 2d 96, 153 N. W. 2d 49, this court stated a classification is unreasonable only where it is found that the legislature has abused its discretion beyond a reasonable doubt.

". . . Thus when the presumption of constitutional validity is combined with the standards of classification, it follows that the presumption is superimposed upon the standards so that to declare an act of the legislature as to a classification violative of the equal-protection clause, it is first necessary to prove that the legislature has abused its discretion beyond a reasonable doubt." *State ex rel. La Follette v. Reuter, supra,* page 111.

Sec. 973.10 (1), Stats., provides that in counties having a population of less than 500,000, probationers are in the legal custody of the H&SS Department and are subject to the rules and regulations of the department. Sec. 973.11 (2), provides that in counties having a population of more than 500,000, probationers are in the custody of the probation departments of the criminal

branches of the circuit courts. The probation depart-ments of the circuit courts are vested with the powers otherwise vested in the department. Sec. 973.11 (3). We are not convinced that a classification established by the legislature, which provides for different pro-cedures in counties having a population of more than 500,000, is irrational or arbitrary. Thus, the difference in procedure does not offend the constitutional provisions requiring equal protection of the law.

### Right to counsel.

The petitioners argue that due process, equal pro-tection, and both the sixth amendment to the United States Constitution and art. I, sec. 7 of the Wisconsin Constitution, make the presence of counsel at hearings on revocation in the three situations considered in these proceedings a matter of right. We are not so persuaded.

*Mempa v. Rhay* (1967), 389 U. S. 128, 88 Sup. Ct. 254, 19 L. Ed. 2d 336, involved the question of the right to counsel at revocation of probation and deferred sen-tencing. The court held that the revocation of probation and imposition of sentence were invalid where the de-fendant was not represented by counsel and the appoint-ment of counsel was not offered. The court stated:

". . . *Townsend, Moore,* and *Hamilton,* when the *Betts* requirement of special circumstances is stripped away by *Gideon,* clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected. In par-ticular, Townsend v. Burke, supra, illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to counsel applies at sentencing. . . .

". . . All we decide here is that a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing. . . ." *Mempa v. Rhay, supra,* pages 134, 137.

The court pointed out that counsel is necessary to recommend "as to the length of time that the person should serve, in addition to supplying (the court) with various information about the circumstances of the crime and the character of the individual," and to preserve certain rights including the right to withdraw a guilty plea and the right to appeal.

A minority of the courts of other jurisdictions have construed *Mempa* as not limited to its factual context, but rather have seen fit to extend the rationale of *Mempa*, and as so extended consider it to be authority for the right to counsel at probation and parole revocation hearings.[7]

However, the majority of courts considered *Mempa* to apply to its factual context, and thus not to require counsel at a parole or probation revocation hearing. We here adopt the holdings of the majority and determine that the presence of counsel at the revocation hearing is not required.

"We do not interpret or construe *Mempa* as extending the constitutional requirement of counsel to parole revocation hearings before the state board of probation and parole. The *Mempa* decision concerned a deferred-sentencing situation, whereas here, sentence had been imposed and the petitioner confined pursuant thereto. The adversary system had been terminated and the correctional and rehabilitative processes of the parole system substituted in its place. Thus, we are no longer concerned with the matter of sentencing or the procedures connected therewith. . . . A hearing before the parole board is a nonadversary proceeding, and as described in Washington v. Hagan, 287 F. 2d 332 (3d Cir. 1960), cert. denied, 366 U. S. 970, 81 S. Ct. 1934, 6 L. Ed. 2d 1259:

"'The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced

---

[7] *Hewett v. North Carolina* (4th Cir. 1969), 415 Fed. 2d 1316; *Scarpelli v. Gagnon* (E. D. C. Wis. 1970), 317 Fed. Supp. 72; *Goolsby v. Gagnon* (E. D. C. Wis. 1971), 322 Fed. Supp. 460.

and, if he wishes, has gone through the process of appeal. Now the problem becomes one of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer representation and lawyer opposition in the matter of revocation of parole.' " *Johnson v. Stucker, supra,* pages 39, 40.

*See also: Williams v. Patterson* (10th Cir. 1968), 389 Fed. 2d 374; *John v. State* (N. Dak. 1968), 160 N. W. 2d 37; *Sammons v. United States* (S. D. C. Texas 1968), 285 Fed. Supp. 100; *Petition of DuBois* (Nev. 1968), 445 Pac. 2d 354; *United States v. Hartsell* (E. D. C. Tenn. 1967), 277 Fed. Supp. 993; *United States v. Brierly* (D. C. Pa. 1968), 288 Fed. Supp. 401; *Beal v. Turner* (1969), 22 Utah 2d 418, 454 Pac. 2d 624.

### *Retroactivity.*

Inasmuch as we have determined that petitioners have a right to a limited hearing, we must determine whether such a requirement should be applied retroactive.

In *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, the court established three criteria to determine whether a procedural requirement affecting a criminal prosecution should be retroactively applied: (1) The purpose to be served by the new standard; (2) the extent of the reliance by law enforcement authorities and by the state on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standard.

With justification, the department has relied upon *Escoe v. Zerbst, supra,* as precedent that a revocation hearing is not a constitutional right. We are also satisfied that applying the hearing requirement retroactive as to all presently in state penal institutions would place a heavy and unreasonable burden upon the state. Fur-

thermore, while we do not minimize the liberty of one convicted of a crime and on probation or parole as contrasted to one in a penal institution, we do recognize there is considerable difference between such liberty and that of one accused of crime before conviction and sentencing.

In *Johnson v. New Jersey* (1966), 384 U. S. 719, 727, 728, 86 Sup. Ct. 1772, 16 L. Ed. 2d 882, it was stated that retroactive application is justified where "the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' " The hearing required by this decision does affect a fact-finding process. However, it goes to the question of violation of conditions of probation or parole and not to the determination of guilt or innocence of the accused in a constitutional sense. The conditional liberty that is involved in a revocation hearing relates to the manner of serving of a sentence previously imposed after conviction of a crime.

We, therefore, determine that the hearing granted by this decision shall be prospective only except as to those petitions on file in this court or any trial court in the state as of the date of this mandate. The probation and parole revocations in those cases must be declared a nullity. The department is directed to expunge the revocations from the prisoner's record. The department may still hold revocation hearings at this time if it has jurisdiction over the prisoners.

*Petitioners' motion.*

The respondent, in appendix to its brief, set forth certain factual information relating to instant petitioners and others. Petitioners challenge some of the factual allegations in the respondent's appendix and move this court to disregard said appendix. We have not considered such factual information material to the dis-

position of petitioners' cause, and petitioners' motion is denied.

*By the Court.*—As to those petitioners retained in the custody of the H&SS Department, the department shall conduct a hearing in a manner consistent with this opinion.

HALLOWS, C. J. (*concurring in part*). I agree parole and probation violators are entitled to a hearing but on constitutional grounds; and if the hearing is to be an administrative one, it should be more formal and not so limited as the majority has decided. The testimony should be given under oath, a complete written record should be made, and the appeal should not be restricted to whether the department acted arbitrarily and capriciously. The scope of review should be the same as on appeals from other administrative agencies as provided in sec. 227.20, Stats.[1]

I disagree with what seems to me to be the basic premise of the court's opinion that there is no constitutional basis for requiring a judicial hearing as a procedural step before parole or probation can be withdrawn. I agree with *Hahn v. Burke* (7th Cir. 1970), 430 Fed. 2d 100, which I read as requiring a judicial hearing. *Hahn* did not order the district court to direct the H&SS Department to hold a revocation hearing but stated, "The Wisconsin court may, however, hold a

---

[1] "227.20 **Scope of review.** (1) . . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

"(a) Contrary to constitutional rights or privileges; or

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

"(c) Made or promulgated upon unlawful procedure; or

"(d) Unsupported by substantial evidence in view of the entire record as submitted; or

"(e) Arbitrary or capricious."

probation revocation hearing at this time if it has jurisdiction over probationer."

I think, too, the distinction between right and privilege in respect to due process is no longer valid (*see* cases cited in *Hahn* at p. 103), and a judicial hearing should be had. Some people would quarrel with the decisions of the United States Supreme Court decided later than the 1935 case of *Escoe v. Zerbst,* 295 U. S. 490, 55 Sup. Ct. 818, 79 L. Ed. 1566, and would prefer to keep privileges under the "grace" of the government rather than treat them as a right of the people in a democracy.

If parole or probation, whether a right or privilege, is granted, then procedural due process should be applied to the manner of their revocation. This problem is analogous to the one in which this court held that counsel did not need to be appointed at a preliminary hearing because the hearing was statutory and was not required by the constitution. This court has now outlived that concept, *see State ex rel. Offerdahl v. State* (1962), 17 Wis. 2d 334, 116 N. W. 2d 809; and *Sparkman v. State* (1965), 27 Wis. 2d 92, 98, 133 N. W. 2d 776.

I do not find a valid distinction in classification between Milwaukee county, in which a judicial hearing is granted for probation, and the rest of the state based on the fact Milwaukee county has a population of over one-half million people and its probation department is an arm of the court. Revocation hearings, whether of probation or parole, should be judicial and uniform throughout the state, with their primary inquiry to determine whether the defendant has in fact violated the rules and regulations governing his parole or probation.

The court's opinion takes the view that the judicial process is terminated once a man has been found guilty and sentenced and that the administrative process has been substituted in its place. The more recent thinking is found in the commentaries to the ABA Project on Minimum Standards for Criminal Justice: *Standards Relating to Probation,* sec. 5.4, p. 69:

"The probation revocation proceeding, in other words, involves exactly the same kind of problem as is involved in the criminal trial itself—the ascertainment of historical events about which there may be some dispute and the consideration of those events against a standard of conduct to which the probationer is expected to adhere."

Standard 5.4 on the nature of revocation proceedings, at least as applied to probation, indicates quite clearly that the hearing should be in an open court proceeding and the violation should be established by the government by a preponderance of the evidence.[2]

A judicial hearing is especially required in a case of mandatory release, sec. 53.11 (7) (a), Stats., because a person has served his sentence less good time and has a right to his freedom. Whatever arguments can be made by the majority for an administrative hearing rather than a judicial one for discretionary parole or probation violations and those cases which involve a change of mind on the part of the department as to a person's fitness for parole cannot be validly applied to a mandatory release case.

While this proceeding may add a few cases to the trial court's calendar, in the long run it will not add to judicial work of the system because, if experience is any guide,

---

[2] "5.4 Nature of revocation proceedings.

"(a) The court should not revoke probation without an open court proceeding attended by the following incidents:

"(i) a prior written notice of the alleged violation;

"(ii) representation by retained or appointed counsel; and

"(iii) where the violation is contested, establishment of the violation by the government by a preponderance of the evidence.

"Sentence should be imposed following a revocation according to the same procedures as are applicable to original sentencing proceedings.

"(b) The government is entitled to be represented by counsel in a contested revocation proceeding.

"(c) As in the case of all other proceedings in open court, a record of the revocation proceeding should be made and preserved in such a manner that it can be transcribed as needed.

"(d) An order revoking probation should be appealable after the offender has been resentenced."

the work on appeals from these administrative hearings will exceed the work of the initial judicial hearings. While the legitimate avoidance of court work is to be encouraged, people should not be denied a determination of their rights in courts because courts are busy; neither time, overwork, nor costs should be the price of justice.

ROBERT W. HANSEN, J. (*concurring*). The majority opinion is carefully researched, closely reasoned, and persuasively presented. However, in this writer's opinion, it goes one step beyond the rationale and result reached by Mr. Justice CARDOZO in *Escoe v. Zerbst* (1935), 295 U. S. 490, 55 Sup. Ct. 818, 79 L. Ed. 1566, by regarding a review hearing, not as an opportunity to challenge validity, but as a prerequisite to validity. This additional step the writer would not take.

The writer agrees with the court majority that *Escoe* clearly holds that there is no ". . . basis in the Constitution, apart from any statute" for requiring a pretermination hearing as a constitutionally required procedural step before the privilege (or, to quote *Escoe,* an "act of grace") of probation or parole can be withdrawn. The chief justice of this court, concurring in part, would deny what *Escoe* grants— ". . . The power of the lawmakers to dispense with notice or a hearing as part of the power of the procedure of probation. . . ." The chief justice finds distinctions between rights and privileges to be "no longer valid." This writer doubts that a state court has the right to thus abandon the distinction made in *Escoe* and exactly reverse a unanimous decision of the United States Supreme Court that recognized an area of constitutionally permissible legislative authority in dealing with a privilege. If it could, the writer doubts that it should. If every privilege is to become a right, both the concept of basic rights and the definition of privileges granted will be ill-served by the blurring of all distinction between them. It is true that in totalitarian societies the distinction often is

dissolved—basic rights become no more than privileges, withdrawable by the state. However, to urge the reverse —that privileges granted are to become rights—is an anarchistic opposite extreme equally ill-advised. One abandons more than the dictionary when he holds either that a right is no more than a privilege or that a privilege is no less than a right.

As to the privilege of probation granted and subsequently withdrawn, *Escoe* makes clear that, while a pretermination hearing is not constitutionally required, there is a need to protect against the entirely arbitrary exercise of the valid discretionary authority to revoke or withdraw. This has been termed "substantive due process," (*see* 29 A. L. R. 2d 1074, 1085) or, by this court, as procedures ". . . to insure the fair administration of justice." (*State ex rel. Plutshack v. H&SS Department* (1968), 37 Wis. 2d 713, 155 N. W. 2d 549, 157 N. W. 2d 567.)

While there applying a federal statute requiring an appearance before the court in federal code probation revocations, the reference in *Escoe* to ". . . an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused. . ." (*Escoe v. Zerbst, supra,* at page 493), clearly relates to such protection of a person granted conditional liberty after being convicted of a crime against revocation of probation or parole by arbitrary action, whim or caprice. Where the privilege of probation or parole is withdrawn by action of the administrative agency having custody of the parolee or probationer, such protection against entirely arbitrary or unwarranted revocation would, as this writer sees it, require (1) notice of reason given for action taken; (2) an administrative review hearing, on request of the parolee or probationer involved; and (3) recourse to the committing court, by appropriate writ, for judicial review of the record on the issue of arbitrariness of the administrative action taken.

The writer sees the right to review as an opportunity to challenge, not as a prerequisite to the valid withdrawal of the privilege involved. What is to be protected against is arbitrary action taken by whim or caprice. However a claim of arbitrariness or a request for inquiry or limited hearing can reasonably be required as the fact that triggers need for inquiry or review. No hearing being constitutionally required under *Escoe*, in determining requirements of "substantive fair play," we are entitled to give weight to the need for flexibility of rehabilitative efforts and avoidance of unrequested or unwanted pretermination hearings. The distinction between a hearing as a prerequisite to validity and a review hearing as an opportunity to challenge validity derives from the differing requirements of " 'procedural due process'— the right to a hearing as a procedural step,—and 'substantive due process'—which protects against the arbitrary exercise of a valid power. . . ." (29 A. L. R. 2d, page 1087.) It is substantive, not procedural, due process that, under *Escoe*, is here involved.

In cases dealing with the deportation of aliens illegally in this country, the distinction between "substantive due process"—the right to challenge validity—and "procedural due process"—the requirement of a hearing as a constitutionally mandated prerequisite to validity is maintained. In *Jay v. Boyd* (1955), 351 U. S. 345, 354, 76 Sup. Ct. 919, 100 L. Ed. 1242, the nation's high court notes that ". . . such aliens have been given a right to discretionary determination on an application for suspension. . ." adding that ". . . a grant thereof is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace. . . ." Making the analogy to probation revocations, the court states, ". . . Like probation or suspension of criminal sentence, it 'comes as an act of grace,' *Escoe v. Zerbst*, 295 U. S. 490, 492, and 'cannot be demanded as a right,' *Berman v. United States*, 302 U. S. 211, 213. . . ." In that case the United States Supreme Court upheld the federal statute giving the attorney general the ". . . unfettered

discretion" to suspend deportation as ". . . analogous to the Board of Parole's powers to release federal prisoners on parole. . . ." The attorney general had adopted regulations delegating his authority to special inquiry officers, specifically, as the high court phrased it, ". . . giving the alien the right to apply for suspension during a deportation hearing; putting the burden on the applicant to establish the statutory requirements for eligibility for suspension . . . ." (*Jay v. Boyd, supra,* at page 351.) So the writer would, as does the majority, require a limited administrative hearing but as an opportunity to challenge the validity of the revocation order, not as a prerequisite to its validity or as a required preliminary procedural step to be taken before the order to revoke can be issued.

The chief justice, concurring in part, suggests that "Revocation hearings, whether of probation or parole, should be judicial. . . ." Even if *Escoe* is ignored or overruled, the application of procedural due process, rather than substantive due process, would not imply a requirement of a judicial hearing rather than administrative hearing in the absence of statutory provision therefor. To hold that a right to a hearing means a right to a court hearing would have sweeping implications in the whole area of administrative law. If this interpretation were accepted, many administrative hearings in many areas of public administration would become constitutionally infirm. At a time when judges, from the highest court in the land to purely local tribunals, are seeking ways to prevent a complete breakdown in the administration of criminal justice by reason of case backlogs and overloads, the adverse impact of requiring (as a prerequisite to the exercise of valid power by an administrative agency) a court or judicial hearing on all parole and probation revocations, is not to be ignored. This would not add a straw. It would dump a whole new load of hay on the back of an already overburdened camel. To argue that justice re-

quires bringing every revocation of parole or probation
to a court before action can be taken is to exalt form
over substance. The opportunity for judicial review
of administrative action is what is constitutionally re-
quired to be assured, not judicial authorization in ad-
vance of administrative action in every case. Beyond
constitutional requirements, it is for the legislature to
decide between judicial validation in advance or judicial
review of administrative actions on proper application.
The choice between constitutionally valid public policy
alternatives is for the legislature, not the courts, to make.
To insist upon the preferences of a court, or single
member of this court, as between judicial revocation of
parole and probation or administrative action with ju-
dicial review is to judicially enact a statute, not to in-
terpret either a statute or the constitution. The tempta-
tion to thus invade the constitutionally established area of
legislative action should be resisted. Some measure of
judicial restraint is the price of preserving the tripartite
form of government of our democratic republic.

The chief justice sees a distinction between the rights
and status of one who is paroled by action of the state
parole board and one paroled by operation of the manda-
tory release law. The shocking result would be that a
prison inmate paroled by reason of good conduct within
the institution would somehow be held to have less rights
and inferior status to one who did not earn the right to
parole but secured it solely by the passage of time as
provided for by the mandated release on parole statute.
This would adversely affect the entire rehabilitatory pur-
pose of penal institutions by lessening the motivation to
deserve and secure discretionary parole at least near the
time of mandatory parole under the statute. There are
statutorily established two ways of securing parole—one,
discretionary; the other, mandatory. The first is based
on good conduct and cooperation. The second is based
on the passage of time. There are two routes to parole,
but, once on parole, the status and rights of the merited

and mandatory parolees are identical. To make fish of the first and fowl of the second has no basis in law or common sense.

The writer concurs in reversal but would stop short of holding that a hearing is required in every case as a prerequisite to the valid exercise of the right to revoke probation or parole. Rather, the writer would hold that there be, *on request*, ". . . an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused. . . ."

The following memorandum was filed June 2, 1971.

PER CURIAM (*on motion for rehearing*). The first full paragraph beginning on page 548 of the opinion has been modified by striking the second sentence in that paragraph.

The paragraph is to read as follows:

"We do not here attempt to spell out in detail the specific procedural characteristics of the revocation hearings to be held by the department. The type of hearing we refer to is a factual hearing relating to the grounds of revocation so that, on review, it can be determined whether the department acted arbitrarily and capriciously in ordering revocation."

The motions for rehearing are denied without costs.