MANUEL CARBALLO, Secretary Department of Health and SocialServices
Your predecessor requested my opinion on a number of questions relating to the probation and parole revocation hearings which your department has been required to conduct and has been conducting since the decision of the Wisconsin Supreme Court inState ex rel. Johnson v. Cady (1971), 50 Wis.2d 540,185 N.W.2d 306, which decision preceded the also applicable decisions of the United States Supreme Court in Morrissey v. Brewer (1972),408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, and Gagnon v. Scarpelli
(1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. Those questions concern the timing of revocation hearings when a new criminal offense is involved and the propriety of the use of departmental employes as hearing examiners to conduct such hearings and to make a synopsis of evidence, findings of fact, and a recommendation concerning disposition to the secretary. *Page 21 
I.
On the first subject, your department advises that when a probationer or parolee, arrested for and charged with a new criminal offense, has also apparently committed violations of other conditions of probation or parole and these other violations themselves appear to require revocation, the department has been conducting revocation hearings prior to the completion of court action on the new offense. When appropriate on the basis of the evidence adduced at these hearings, the department has been revoking probation or parole on the basis of the other proven violations of the conditions thereof.
Under these circumstances, my opinion is requested as to whether:
 1. The department may proceed with the revocation hearing before court proceedings on the new criminal offense have been completed and revoke probation or parole on the basis of other proven violations of conditions of probation or parole;
 2. The department is obligated to defer the revocation hearing until court proceedings with respect to the new criminal offense have been completed;
 3. The probationer or parolee and the department may agree to the postponement of the revocation hearing until court proceedings with respect to the new criminal offense have been completed.
For the reasons discussed below, it is my opinion that under the described circumstances:
1. The department not only "may," but should, proceed with revocation hearings prior to completion of court proceedings on the new offense and, if appropriate, should revoke on the basis of other proven violations of the conditions of probation or parole;
2. The department is not obligated to delay revocation hearings and action until the completion of court proceedings on the new offense; and
3. The probationer or parolee and the department may agree to the postponement of revocation hearings until the completion of the court proceeding on the new offense, but, except in unusual circumstances, I advise against entering into such an agreement. *Page 22 
The state may properly subject a probationer or parolee to many restrictions not applicable to other citizens. Morrissey,408 U.S. at 482. This is done by granting probation or parole under certain stated conditions. One of the conditions is that the probationer or parolee not violate the criminal law. This, however, is only one of a number of conditions imposed and violation of any of them may justify and require revocation of probation or parole.[1]
When it appears that a probationer or parolee, who has been arrested for and is charged with a new crime, has also violated other conditions of his probation or parole and these violations themselves appear to require revocation, the department should not delay revocation to await completion of court proceedings on the new crime. Many months may pass before there is final trial court action on the new crime and many more months will pass before final disposition if there is an appeal. Long delay in achieving a proper and needed revocation of probation or parole is not only undesirable from the point of view of both offender rehabilitation and public protection, but it is also legally suspect and completely unnecessary.
Unreasonable delay in revocation proceedings, which is the usual result of awaiting the outcome of a new criminal prosecution, is legally suspect for at least two reasons. The first is that the Wisconsin Supreme Court has recognized that a parolee, who has violated the conditions of parole and is also awaiting court proceedings on a new criminal offense, is "entitled to be held in prison rather than in the county jail . . . where such imprisonment does not count toward the serving of his sentence." Gaertner v. State (1967), 35 Wis.2d 159,165, 150 N.W.2d 370. of course, the parolee cannot be returned to prison or the sentenced probationer imprisoned until at least the preliminary hearing on revocation has been completed and the hearing officer determines that there is probable cause to hold the parolee for a final decision on revocation.Morrissey, 408 U.S. at 487.
The second reason why long delay in conducting probation or parole revocation hearings is legally suspect is that, if the probationer or parolee is detained in the county jail on the basis of *Page 23 
a departmental hold order,[2] rather than because of failure to post bail on the new charge, such delay may constitute a violation of the right of the probationer or parolee to due process of the law. In Morrissey, which involved parolees arrested and detained as parole violators, the United States Supreme Court held that due process requires a described "preliminary hearing" and also, if desired by the parolee, a described "revocation hearing."[3] The preliminary hearing must be held:
 ". . . as promptly as convenient after arrest [as a parole violator] while information is fresh and sources available." Morrissey, 408 U.S. at 485.
Thereafter, if the parolee desires a "revocation hearing," that hearing:
 ". . . must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months . . . would not appear to be unreasonable." Morrissey, 408 U.S. at 489.
As demonstrated above, any unreasonable delay in the conduct of revocation hearings may cause legal problems. It is also unnecessary. The department is not obligated to defer revocation hearings until after the completion of court proceedings on the new charge, and whatever happens on the new charge is immaterial to the validity of a revocation properly made on the basis of the violation of other conditions of probation or parole. Hughes v.State (1965), 28 Wis.2d 665, 137 N.W.2d 439.[4]
The probationer or parolee and the department may enter into an agreement to postpone revocation hearings until after the completion of court proceedings on the new charge. I do not advise *Page 24 
the department to enter into such an agreement, however, in the absence of some extraordinary circumstances. Doing so in a situation where prompt revocation is desirable or required and is properly based on the violation of other conditions of probation or parole is unnecessary, undesirable, and creates treatment, public protection, and legal problems. It also tends to undermine the probation and parole system by appearing to dilute, if not remove, the accountability of a violator for his violation of the conditions of probation or parole.
Further, as stated by the United States Supreme Court inMorrissey, 408 U.S. at 482:
 ". . . Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."
Normally, the department should not waive the state's above-described "overwhelming interest" by agreeing to delay a needed revocation to await the completion of court proceedings which are extraneous to the revocation.
II.
The second subject on which my advice is sought deals with the use of a hearing examiner to conduct the final revocation hearing and thereafter to prepare a synopsis of the evidence, findings of fact, and a recommendation concerning disposition to the Secretary of the Department of Health and Social Services. Apparently, defense counsel have:
 ". . . questioned the independence of these examiners in as much as they do enter actively into the proceedings, questioning witnesses and making rulings on motions of counsel. Subsequently, still as employees of the Department, they make recommendations for action by the Secretary."
In my opinion this arrangement for the use of a hearing examiner is consistent with the dictates of due process as set forth in Morrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2593,33 L.Ed.2d 484; Gagnon v. Scarpelli (1973), 411 U.S. 778,93 S.Ct. 1756, 36 L.Ed.2d 656, and other applicable federal cases. Further, there is nothing inconsistent between this arrangement *Page 25 
and the decisions of the Wisconsin Supreme Court in such cases asState ex rel. Johnson v. Cady (1971), 50 Wis.2d 540,185 N.W.2d 306, and Hortonville Education Association v. Joint SchoolDistrict No. 1 (1975), 66 Wis.2d 469, 225 N.W.2d 658.
As indicated in the first three above-cited cases, probation and parole revocation is a matter traditionally and properly handled by administrative agencies, and the two types of hearings required by due process, as defined in Morrissey and Scarpelli, are hearings conducted before employes of such agencies. The fact that the persons conducting the hearings are agency employes is immaterial, inevitable, and in no way violates due process.
The first hearing required by Morrissey and Scarpelli is a preliminary hearing to determine whether there is probable cause to hold the probationer or parolee for a final decision on revocation. This hearing must be before an "independent officer" who is therein defined as "someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation." Morrissey, 408 U.S. at 486. This hearing, then, properly and consistent with due process is conducted before another parole officer.
The second and final revocation hearing required by due process as defined in Morrissey and Scarpelli is a hearing which is conducted only if the probationer or parolee so desires. Its purpose is to make "a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." Morrissey, 408 U.S. at 488. This hearing must be before a "neutral and detached" hearing body. Morrissey,408 U.S. at 489.
In Wisconsin, the Department of Health and Social Services, of which you are Secretary, makes the decision on whether the probation or parole of persons in its custody is to be revoked. Secs. 973.10 (2), 57.06 (3), 57.07 (2), and 57.072, Stats. You, as head of the department, are the required "neutral and detached" hearing body and decisionmaker. This fact, however, does not require that you personally conduct or be present at revocation hearings. It is proper and consistent with due process for you to delegate to a hearing examiner the job of conducting the hearing *Page 26 
and thereafter preparing for you, the decisionmaker, a synopsis of the evidence, findings of fact, and a recommendation.[5]
Two attorneys have been appointed and are functioning as revocation hearing examiners. They are employes of the department, but they are not employes of the Division of Corrections, an agent of which is seeking revocation. During the conduct of the hearing the examiner, of course, must rule on motions made to him and he, just as a court,[6] has a right and duty to clarify the testimony presented by asking additional questions of witnesses. These activities, which are innate in the job, do not make the examiner or you, as his principal, other than a "neutral and detached" hearing body as required byMorrissey and Scarpelli.
Further, these activities by the examiner, together with the fact that he makes a recommendation to you, do not destroy your status as an impartial decisionmaker. Neither you nor he has a direct personal pecuniary interest in the outcome of the proceedings as has been condemned by the United States Supreme Court.[7] Further, neither you nor he was involved "in the events which precipitated decisions . . . [you] were required to make" as in Hortonville Education Association v. Joint SchoolDistrict No. 1 (1975), 66 Wis.2d 469, 494, 225 N.W.2d 658.[8]
The procedures followed do not give rise to "a risk of actual bias or prejudgment." Withrow v. Larkin (1975), 421 U.S. 35,95 S.Ct. 1456, 1464, 43 L.Ed.2d 712.
It is my opinion, therefore, that the described use of hearing examiners is consistent with due process as defined in Morrissey,Scarpelli, and other applicable federal and state court decisions.
BCL:BRB
[1] A review of recent Wisconsin Supreme Court cases involving revocation of probation or parole reveals that revocation was properly made and, in all of the cases reviewed, revocation was based on a violation of conditions other than that Involving the commission of a new crime.
[2] As pointed out in In Re LaCroix (1974), 115 Cal. Rptr. 344,524 P.2d 816 820, f. 2, a case in which review was recently denied by the United States Supreme Court, "The procedural rights mandated by Morrissey are applicable only in those instances wherein a parolee has been physically deprived of his conditional liberty pursuant to a claimed parole violation. If he is taken into custody on new criminal charges without having been arrested as a parole violator or subjected to a `parole hold,' Morrissey
is inapplicable and continues to be inapplicable until such time as he is subjected to restraint as a parole violator . . . ."
[3] Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756,36 L.Ed.2d 656. makes the requirements of Morrissey also applicable to revocation of probation.
[4] In Hughes, probation was revoked by a Milwaukee court after Hughes had been convicted of a new offense. The new conviction was subsequently set aside and Hughes asserted that the court order revoking probation also had to be vacated. The lower court and the Supreme Court both found no merit in this argument, since the record revealed that probation had been revoked not because of conviction of a new crime, but because of the violation of other conditions of probation.
[5] Hearing examiners, who perform the tasks described above, are used by most state and federal administrative agencies. Their use in this way is proper and consistent with due process. 2 Davis, Administrative Law Treatise sec. 11.02, 73 C.J.S., PublicAdministrative Bodies and Procedures, secs. 135-142, Morgan v.United States (1936), 298 U.S. 468, 481, 482. 56 S.Ct. 906,80 L.Ed. 1288 Richardson v. Perales (1971), 402 U.S. 389,91 S.Ct. 1420, 28 L.Ed.2d 842.
[6] Lewis v. State (1973), 57 Wis.2d 469, 474,204 N.W.2d 527; State v. Bergenthal (1970), 47 Wis.2d 668, 680,178 N.W 2d 16.
[7] Gibson v. Berryhill (1973), 411 U.S. 564, 93 S.Ct. 1689,36 L.Ed.2d 488; Ward v. Village of Monroeville (1972), 409 U.S. 57,93 S.Ct. 80, 34 L.Ed.2d 267; and Tumey v. Ohio (1927),273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749.
[8] See also, In re Murchison (1955), 349 U.S 133,75 S.Ct. 623, 99 L.Ed. 942. *Page 27