# WILLIAM A. STRONG v. STATE.

No. A-10460.   Nov. 7, 1945.

(163 P. 2d 242.)

Moman Pruiett, W. H. C. Taylor, and David Tant, all of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., E. J. Broaddus, Asst. Atty. Gen., and George Miskovsky, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, P. J.   Defendant, William A. Strong, was charged in the district court of Oklahoma county by information with the crime of obtaining money under false pretenses; was tried, convicted, and sentenced to serve a term of seven years in the penitentiary, and has appealed.

The information charging defendant contained three counts. The first count charged him with obtaining money under false pretense; the second charged extortion, and the third, larceny by fraud.

At the conclusion of the state's testimony, the county attorney elected to stand on the first count in the information. Under this count it was alleged:

"On the 7th day of February, 1942, in Oklahoma County, State of Oklahoma, William A. Strong, whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully, and feloniously commit the crime of "Obtaining Money Under False Pretenses "in the manner and form as follows, to-wit:

"That is to say, the said defendant, William A. Strong, in the county and state aforesaid, and on the day and year aforesaid, then and there being, acting conjointly and together with one Fred D. Lowe and one Charles D. McNally, did then and there conspire with the said Fred D. Lowe and Charles D. McNally, and with each other, and did wilfully, unlawfully, designedly and feloniously obtain from Marie Eisiminger the sum of Eight Thousand and 00/100 Dollars ($8,000.00) in good and lawful money of the United States of America, by means and use of false and fraudulent representations, statements and pretenses: that is to say, the said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, represented to the said Marie Eisiminger that they, the said defendant and the said Fred D. Lowe and Charles D. McNally, could and would procure a pardon from * * * Governor of the State of Oklahoma for one J. W. Eisiminger, husband of the said Marie Eisiminger, who at said time, was serving a life sentence in the State Prison, at McAlester, Oklahoma, upon the charge of murder; and said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that they, the said defendant and the said Fred D. Lowe and Charles D. McNally, could and would

secure the release of the said J. W. Eisiminger from the said State Prison even though, at said time, said defendant and the said Fred D. Lowe and Charles D. McNally knew that there was, on said date aforesaid, an outstanding Federal hold order upon the person of the said J. W. Eisiminger at the said State Prison, at McAlester, Oklahoma; and, in this connection the said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, represented and stated to the said Marie Eisiminger that they, the said defendant and the said Fred D. Lowe and Charles D. McNally, could and would have the said * * * Governor of the State of Oklahoma, release the said J. W. Eisiminger to the said Marie Eisiminger; and the said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that they, the said defendant and the said Fred D. Lowe and Charles D. McNally, could and would procure, with the help of * * * a pardon from a Federal conviction outstanding against the said J. W. Eisiminger, through the United States Pardon and Parole Board; and said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that they, the said defendant and the said Fred D. Lowe and Charles D. McNally, would have to pay the sum of Five Thousand and 00/100 Dollars ($5,000.00) to the said [Governor], and, in this connection, said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that One Thousand and 00/100 Dollars ($1,000.00) of the Five Thousand and 00/100 Dollars ($5,000.00), aforesaid, would be paid by * * * to * * *; and said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that Five Hundred and 00/100 Dollars ($500.00) of said money aforesaid would have to be paid to an unknown person for a letter from the Prosecuting Attorney of Oklahoma County, Oklahoma, to be secured by said unknown person; and said

defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, further represented to the said Marie Eisiminger that unless she, the said Marie Eisiminger, paid over the sum of Eight Thousand and 00/100 Dollars ($8,000.00), aforesaid, before 12:00 M., on the 7th day of February, 1942, she, the said Marie Eisiminger, would be prosecuted criminally for the offense of bribery, and that her husband, the said J. W. Eisiminger, would be placed in the brick yard at the State Prison, at McAlester, Oklahoma, where the toughest criminals were held and where most severe punishment was administered; and said defendant, acting conjointly and together with the said Fred D. Lowe and Charles D. McNally, made various other false and fraudulent statements, representations and pretenses in connection with the proposed procurement of the pardon aforesaid; and the said Marie Eisiminger, relying upon the said representations, statements and pretenses of the said defendant, and the said Fred D. Lowe and Charles D. McNally, and believing them to be true, parted with and delivered to the said defendant, and the said Fred D. Lowe and Charles D. McNally, the said sum of Eight Thousand and 00/100 Dollars ($8,000.00), when, in truth and in fact, all of the said representations, statements and pretenses were false and fraudulent, all of which the said defendant, and the said Fred D. Lowe and Charles D. McNally, well knew; and the said Marie Eisiminger, relying upon the representations, statements and pretenses as aforesaid, was induced to part with and deliver unto the said William A. Strong, Fred D. Lowe and Charles D. McNally the sum of Eight Thousand and 00/100 Dollars ($8,000.00), good and lawful money of the United States of America, and the representations on the part of the said William A. Strong, Fred D. Lowe and Charles D. McNally, acting conjointly and together, were then and there made to cheat, wrong and defraud the said Marie Eisiminger out of the said sum of Eight Thousand and 00/100 Dollars ($8,000.00) as aforesaid, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

For a reversal of this case, four assignments of error are presented, as follows:

"I. The Court erred, as a matter of law, in overruling the demurrer of defendant to the first count in the information:

"(a) Because said information does not allege the false representation of any material, present or existing fact.

"(b) Because said information does not allege that the complaining witness did not secure the pardon for which she bargained.

"(c) Because said first count of the information is duplicitous in that it joins in said count more than one distinct offense.

"II. The Court erred in admitting in evidence a letter written by Judge Jean P. Day to the complaining witness, Mrs. Marie Eisiminger, in which letter Judge Day expressed an opinion as to the guilt of the defendant.

"III. The Court erred in instructing on the penalty in said case.

"IV. The verdict of the jury· is contrary to the law and the evidence, and is not supported by the evidence for the reason:

"(a) No material, present or existing fact was proven.

"(b) The evidence showed that the complaining witness received from the defendant just what she bargained for.

"(c) The complaining witness did not rely upon the representations made by the defendant."

We will first consider the second assignment of error. This necessitates a brief statement of the facts, in addition to the allegations in the first count of the information.

This charge was the outgrowth of an attempt by Mrs. Marïe Eisiminger to secure a pardon and release for her husband, Dr. J. W. Eisiminger, who was serving a life sentence in the State Penitentiary for murder, having been convicted in Oklahoma county. We consider it unnecessary to unduly lengthen this opinion by detailing all of the negotiations between the parties involved.

It is conceded that the defendant and those charged with him entered into an agreement with Mrs. Eisiminger to endeavor to secure a pardon for her husband. The defendant, however, contends that he did nothing in connection with the procurement of the clemency which was not legal. The Governor issued a parole, but no pardon was issued. The terms of the agreement were changed, whereby Mrs. Eisiminger agreed to accept a parole, instead of a pardon. This was accomplished by representations made to her that Dr. Eisiminger would be released from prison on the presentation of the parole. The parties who made these representations knew this could not be done, because of a holdover order at the penitentiary, whereby Dr. Eisiminger was to be delivered to the Federal authorities to serve the remainder of a 15 year sentence in the Federal prison, in the event he should be discharged from the State Penitentiary prior to the expiration of the 15 year term.

The defendant and others failed to secure a pardon, but obtained a parole, dated February 5, 1942, which Mrs. Eisiminger refused to accept. At this time she employed Judge Jean P. Day, attorney, to advise her in the matter. His employment was by a written contract, and by the terms thereof Judge Day was to attempt to secure the return of the $8,000 which Mrs. Eisiminger had paid to the defendant (a part of which had been paid to others who had rendered assistance in securing

the parole), and to advise her with reference to whether she should accept a parole instead of a pardon.

Judge Day addressed a letter to Mrs. Eisiminger concerning the investigation he had made, and containing advice with reference to the acceptance of a parole for Dr. Eisiminger. Thereafter, and on February 27, 1942, a second parole was issued, and accepted by Mrs. Eisiminger.

Judge Day was called as a witness by the defendant, and on direct examination was questioned with reference to his having served as a Commissioner of the Supreme Court of this state, and as to his employment by Mrs. Eisiminger. He was then cross-examined by the county attorney, and an attempt was made to introduce in evidence as a part of the cross-examination the contract in writing between Judge Day and Mrs. Eisiminger, and the letter written by Judge Day to Mrs. Eisiminger. The court sustained an objection to the introduction of both instruments. The county attorney continued the cross-examination of Judge Day, and read certain excerpts from the letter, and asked if the statements were true. The court then reversed his former ruling, and permitted the state to introduce the letter to which reference has been made, as. a part of the cross-examination. This was done over the objection of defendant, and the record was properly protected. The letter was as follows:

"Law Offices of
"Jean P. Day
"Parrine Building
"Oklahoma City, Okla.

"Feb. 19, 1942.

"Mrs. Marie Eisiminger,
"2125 Glen Ellyn
"Oklahoma City, Okla.
"Dear Mrs. Eisiminger:

"In order that you may thoroughly understand my position as your attorney under contract dated the 11th day of Feb. 1942, I am writing this letter.

"I am mindful of the cruel and unfortunate situation of certain racketeers through fraud taking from you your $8000.00, all of which I hope at some time you may be able to recover. This, of course, could be accomplished only through long drawn out litigation; and, further, we would have to be able to show beyond any question that at least one of the conspirators was solvent. That is to say, we would have to get judgment against at least one of them that could be made to respond to that judgment. Otherwise, all will be lost. And in view of the facts as disclosed to me there may be some difficulty in connecting the one well to do man in the matter. This, of course, would come out upon the development of the case at the trial.

"As you told me when first you consulted with me, your chief interest in the entire transaction was to get the doctor released. As I have explained to you, I believe this can be accomplished. They contracted to furnish you an unconditional pardon, but instead, they furnished only a parole, and on that parole, took down your $8000.00, which, of course, was unconscionable and too much and not in conformity with their representations and agreement. However, if the doctor accepts this parole, I am confident that he will ultimately get the release.

"You must bear in mind that before the government will entertain an application for clemency, the doctor must be in federal custody under a federal sentence. In other words, if an unconditional pardon had been granted the hold order would have held him in custody for the federal authorities exactly the same as if a parole had been granted, and he would have to have gone into federal custody and gone to federal prison in order that the federal clemency board could entertain his application for clemency.

"So, if he accepts the parole, he will be held in federal custody still and will be taken to a federal prison. Then his application should be made for federal clemency, and, in the event that the federal authorities decline to consider his application due to the fact that he has only a parole, then we have every assurance and fully believe that if the federal authorities so require, that a pardon will then be issued, in which event it will probably be only a short time thereafter that the federal authorities will give favorable consideration to his application.

"This application as to the federal clemency is based upon what Mr. Charlie McNally tells me that Mr. Lyons of the Federal Department in Washington told him relative to the case.

"In other words, what I am trying to make plain to you is that if it becomes necessary that a pardon be granted to an innocent man who is wrongfully suffering, in order that he may receive clemency from the Federal Government, that otherwise would be denied, that then and in such event I am of the firm opinion that a pardon will be granted him.

"If this parole is not accepted forthwith, I believe that same will be revoked and you will be back right where you started except that you will be out of pocket $8000.00, and the doctor will be wholly without hope of relief, and you will have to look forward to a long drawn out law suit to try to recover your money, and as you know, a lawsuit is always an uncertain quantity. Therefore, you have nothing to loose in the doctor's accepting the parole, as that would not waive the fraud practiced upon you by the cruel and unscrupulous perpetrators of the wrong against you.

"So, let's try to get relief for the doctor and if we fail in that, then lets take the lawsuit route. This is my advice to you as your attorney. Of course, if you do not see fit to accept my advice, then that is your responsibility, and not mine.

"I trust that you appreciate and understand the seriousness of this situation, as it affects the Doctor, your husband.

"Yours very truly,

"JPD:R                                           s/Jean P. Day"

The most serious objection to the introduction of the letter is based upon the following statements contained therein:

"I am mindful of the cruel and unfortunate situation of certain racketeers through fraud taking from you your $8,000, all of which I hope at some time you may be able to recover."

"They contracted to furnish you an unconditional pardon, but instead, they furnished only a parole, and on that parole took down your $8,000, which, of course was unconscionable and too much and not in conformity with their representations and agreement."

And:

"Therefore, you have nothing to loose in the doctor's accepting the parole, as that would not waive the fraud practiced upon you by the cruel and unscrupulous perpetrators of the wrong against you."

To support his contention that the statements made in the above letter were inadmissible, as being hearsay, opinion of the writer, and prejudicial to his rights, defendant cites the following cases: Otey v. State, 39 Okla. Cr. 61, 263 P. 155; Casselman v. State, 58 Okla. Cr. 371, 54 P. 2d 678; Lizar v. State, 74 Okla. Cr. 368, 126 P. 2d 552; Wells v. State, 5 Okla. Cr. 22, 113 P. 210; People v. Colburn, 105 Cal. 648, 38 P. 1105; State v. Shaw, 75 Wash. 326, 135 P. 20; Poy Coon Tom v. United States, 9 Cir., 7 F. 2d 109; Hollingsworth v. State, 80 Tex. Cr. R. 299, 189 S. W. 488; Marshall v. United States, 2 Cir., 197 F. 511.

The state in its answer brief does not make reference to any of the above-cited cases, nor is any attempt made to distinguish them from the instant case. The only reason we can conceive, after reading these cases, for not referring to them, is that they could not be distinguished.

The state contends that the fact that Judge Day was placed upon the witness stand by the defendant, and, for the purpose of showing that he was an eminent lawyer, asked if he had been a member of the Supreme Court Commission, justified the state in showing, on cross-examination, the advice given to Mrs. Eisiminger by Judge Day, and the introduction of the letter above quoted. We do not see the force of this argument.

We have read the authorities cited by the state. They are: Rogers v. State, 8 Okla. Cr. 226, 127 P. 365; 70 C. J. p. 638, § 807 (Witnesses); State v. Ford, 286 Mo. 624, 228 S.W. 480; 3 Amer. & Eng. Enc. Law, 2d Ed., 1102; 70 C.J. p. 629, § 800 (Witnesses).

These authorities only state the general rule of law that in no wise touch the issues here presented. Even conceding that a part of the letter could have been offered, there can be no justification for the admission of the three sections above quoted, which a mere reading will show were the expressions of an opinion by the writer of the letter to a party other than the defendant, and were such statements as would be highly prejudicial before the jury that was trying him. The contention that it was offered as impeachment of the witness is untenable. The witness did not at any time deny any statement made in the letter.

Referring to some of the cases cited by the defendant, we note the case of Otey v. State, supra. In this case

an auditor's report, accompanied by a letter, was made to the State Examiner and Inspector. The report and letter transmitting the same were introduced in evidence over the objection of the defendant, who was charged with falsifying records. The letter contained expressions of opinion of the auditor similar to the ones here made, but not so harsh. Judge Davenport, in his opinion, quoting from the case of Hays v. State, 22 Okla. Cr. 99, 210 P. 728, says [39 Okla. Cr. 61, 263 P. 157]:

" 'The defendant contends this evidence was incompetent and prejudicial, and that the error was not cured by its withdrawal from the jury. * * * This examiner's testimony, authenticating his official reports as well as the reports themselves, was competent as tending to throw light upon the question of whether or not the offense was committed, but mere conclusions of the examiner, independent of his official report, are incompetent. For the reasons previously stated, the motion to direct the jury to return a verdict of not guilty should have been sustained.'

"The letter transmitting the audit to the examiner and inspector only expressed the views of the compiler of the report, and was prejudicial to the rights of the defendant, and the objections of the defendant should have been sustained.

"This court holds that the admission of the letter transmitting the audit, together with the notations on the margins of the audit, over the objection of the defendant, was prejudicial to the rights of the defendant.

"There are other errors assigned by the defendant, but, in the view we take of this record, we do not deem it necessary to discuss them. For the errors hereinabove stated, the case is reversed and remanded."

In the case of Casselman v. State, supra [58 Okla. Cr. 371, 54 P. 2d 682], the court said:

"The court also admitted in evidence the letter of transmittal of the accountant in which his conclusions

were embodied, which is inadmissible under the rule announced by this court in Otey v. State, 39 Okla. Cr. 61, 263 P. 155. The admission of this testimony and the audit without the books from which it was made, being in court, and the admission of the accountant's letter of transmittal, is error requiring a reversal."

In the case of Lizar v. State, supra [74 Okla. Cr. 368, 126 P. 2d 554], Judge Jones in the seventh paragraph of the syllabus, says:

"A letter found on an inmate of the jail which contained statements incriminating defendant, and identified by witness as having been written by him to defendant, which said letter was never received by defendant, is hearsay and inadmissible."

In that case the letter was written by the witness to the defendant, and not to a third party.

The case of People v. Colburn, supra, a California case, is quoted in the Lizar opinion. We give a part thereof:

" 'This letter was clearly hearsay. Were such evidence admissible against a defendant charged with crime, there would be no limit to the power of designing persons to manufacture testimony against their neighbors. It will not do to say that Moore was a friend of the defendant, and hence that the evidence was admissible. It would be quite easy for an enemy, under the guise of friendship, to indict the most damaging epistles to a victim whose destruction he was seeking to encompass. * * * The letter was a statement of a third party, in no wise connected with defendant; was not made under the sanction of an oath; and not admissible. * * *' "

"This letter was hearsay and not competent for any purpose."

Further along in the Lizar opinion, the court said: "If we were to sustain the admissibility of this note

in evidence, its tendency to abuse would be so great as might create an injustice in many future cases towards a person accused of crime. It would be very easy to frame an accused by having an alleged accomplice write damaging statements to be read as evidence against the accused to bolster the testimony of the alleged accomplice. This invitation to abuse is so great that we will not extend the exceptions to the hearsay rule for the purpose of authorizing the introduction of such evidence.".

In the case of Krause v. State, 75 Okla. Cr. 381, 132 P. 2d 179, 180, it is stated in the fourth paragraph of the syllabus:

"It is error to admit in evidence, over objection of defendant, a letter written by Deputy State Examiner and Inspector addressed to State Examiner and Inspector and attached to audit which recites work which was done by Deputy Examiner and conclusions of Examiner."

The foregoing cases sustain the proposition that the portion of the letter which expressed the opinion of the writer and referred to the defendant as a "racketeer," and as the "perpetrator of a fraud," should not have been permitted to go to the jury. This was the first opinion of the trial court when he sustained an objection to the introduction of the letter and the contract which had similar references. No one can gainsay the fact that these expressions were damaging and prejudicial to the defendant, and deprived him of a fair and impartial trial. For this reason this case must be reversed.

We have examined the first assignment of error with reference to the demurrer to the information, and are of the opinion that the court did not err in overruling the same.

The third assignment of error cannot be sustained. This proposition has been fully covered in the case of Welch v. State, 78 Okla. Cr. 180, 146 P. 2d 141.

As to the fourth assignment of error, we do not care to discuss the evidence, inasmuch as this case is to be retried. However, we do not find that the court erred in refusing to sustain the demurrer to the evidence, or that the judgment was contrary to law.

For the reasons above stated, the judgment of the district court of Oklahoma county is reversed and remanded.

JONES, J., concurs.   DOYLE, J., not participating.