958 So.2d 981 (2007)
Jonathan Mark MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3777.
District Court of Appeal of Florida, Second District.
May 18, 2007.
James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Jonathan Miller appeals the revocation of his probation, which was based on the trial court's findings that Miller had committed a new offense by tampering with a witness and had disobeyed instructions *982 from his probation officer. Because the trial court's findings are not supported by the evidence presented at the revocation hearing, we reverse and remand for the trial court to reinstate Miller to probation.

Facts
In 1999, Miller was sentenced in case number 98-22426 to fifteen years in prison, suspended after five years with the balance to be served on probation. In case number 99-607, Miller was sentenced to five years in prison, suspended in favor of probation to be served consecutively to the probation in case number 98-22426. Miller was released from prison and began serving his probation in 2003. In 2005, the Department of Corrections filed an affidavit alleging that Miller had violated his probation by committing the offense of tampering with a witness and by failing to follow his probation officer's instructions.
At the revocation hearing, Miller's probation officer, James Steere, testified that on April 29, 2005, he received a message from a woman named Pamela Bocook who reported that Miller was repeatedly calling her at work and that she was going to lose her job if Miller did not stop calling. At the time of these calls, Miller was being investigated by the police for allegedly engaging in lewd and lascivious behavior with Bocook's nine-year-old granddaughter, T.N.B. In response to Bocook's complaint, Steere called Miller and told him not to contact Bocook anymore.
On May 4, Steere spoke with Charles Leonard, who lived with Bocook. Leonard told Steere that Miller was still repeatedly calling Bocook and leaving messages on her answering machine. After this discussion with Leonard, Steere again contacted Miller and instructed him to stop contacting Bocook in any manner and at any location.
The next day, Steere learned that Bocook had dropped off a letter that Miller had allegedly left at Bocook's house. After reading this letter, Steere called Bocook, who told Steere that Miller had been to the Beall's store where she worked earlier that day. Bocook told Steere that she had a layaway slip signed by Miller that he had completed while he was in the store on May 5. Steere then asked Bocook to come to the probation office the next day to provide a sworn statement. However, before Bocook could do so, Steere discussed Miller's case with his supervisor, and they decided to arrest Miller. According to Steere, Miller repeatedly called Bocook from the jail after his arrest until Bocook arranged to have his calls blocked on May 11.
Steere testified that as he was investigating the calls Miller made to Bocook, he learned that Miller was "attempting through various means to get the grandmother to talk to the granddaughter and get her to change her story to the investigators about what he did to her." Steere testified that, in addition to his conversations with Bocook, he spoke with T.N.B.'s mother and stepfather, both of whom told him that Miller was asking them to talk to T.N.B. and "get her to change her story about [Miller] molesting her." Steere also testified that Miller discussed the sexual molestation charges made by T.N.B. in the letter he left for Bocook and that he encouraged Bocook to "talk to her granddaughter" about the charge. However, the State did not call either T.N.B.'s mother or stepfather to testify at the revocation hearing, and the State did not introduce into evidence the letter Steere had gotten from Bocook.
In addition to Steere, the State called Detective Jessie Warren to testify at the revocation hearing. Warren was the detective who had investigated the molestation charges T.N.B. had made against Miller. During Warren's testimony, the State *983 asked whether it had come to Warren's attention that Miller was tampering with possible witnesses in the case. Warren responded that Miller had "admitted to me that he had been contacting the grandmother, had talked to her on the phone." However, Warren did not testify to the substance of any discussions between Miller and Bocook and did not testify that Miller had admitted to tampering with any witnesses.
The State also called Bocook to testify. Bocook testified that Miller had called her repeatedly at work and that her manager and supervisors were "fed up" with his calls. She testified that each time Miller called, he asked her to talk to T.N.B. and find out what T.N.B. was going to say to the police. After three or four days of repeated telephone calls, Bocook called Steere to complain. Bocook testified that when Miller continued to call her, she simply stopped answering the telephone until she arranged to have his calls blocked. Bocook also testified that Miller had dropped off and mailed numerous letters at her residence, but she denied reading them. Instead, she took them, unopened, to Miller's probation officer.
Based on this evidence, the trial court found that Miller had violated condition five of his probation by committing the offense of tampering with a witness and condition nine of his probation by disobeying the instructions of his probation officer. The trial court then revoked Miller's probation and sentenced him to fifteen years in prison with credit for time served in case number 98-22426. In case number 99-607, the trial court sentenced Miller to a consecutive five-year prison term.[1]

Condition Five
The trial court first found that Miller violated condition five of his probation by committing the new criminal offense of tampering with a witness. On appeal, Miller argues that there was no competent nonhearsay evidence to establish that he tampered with a witness. We agree.
Section 914.22(1)(f), Florida Statutes (2005), defines tampering with a witness as using intimidation or threats against another person with the intent to cause or induce the other person to "[t]estify untruthfully in an official investigation or an official proceeding," or attempting to do so. Section 914.22(1)(e) prohibits the same conduct when done with the intent to "[h]inder, delay, or prevent the communication to a law enforcement officer or judge of information relating to the commission or possible commission of an offense. . . ." Based on these statutory definitions, in order to establish that a defendant was tampering with a witness, the State must prove not only that the defendant had contact with the witness, but also that the nature of the contact was such that it would either cause or induce the witness to testify untruthfully or not to testify at all. It is the nature of the contact between the defendant and the victim that distinguishes the crime of tampering with a witness from the crime of stalking under section 784.048, Florida Statutes (2005).
Here, neither T.N.B.'s mother or stepfather testified to the content of their conversations with Miller. In addition, while Bocook testified that Miller asked her to talk to her granddaughter and find out what she was going to say to the police, Bocook did not testify that Miller made *984 any attempt during these conversations to convince her to get her granddaughter to testify untruthfully or made any attempt to prevent her granddaughter from cooperating with the on-going investigation. Thus, Bocook's testimony provided no evidence that would support a finding that Miller had tampered, or attempted to tamper, with a witness as those terms are defined by statute.
It is true that Steere testified that Miller attempted to convince Bocook to "talk to her granddaughter and get her to change her story to the investigators about what he did to her." However, Steere's testimony on this issue was hearsay. Although hearsay evidence is generally admissible at a revocation hearing, a revocation of probation may not be based solely on hearsay evidence. Dean v. State, 948 So.2d 1042, 1044 (Fla. 2d DCA 2007); Bales v. State, 793 So.2d 87 (Fla. 2d DCA 2001).
For example, in Bales, the State filed an affidavit alleging that Bales had violated his community control by committing the offense of battery and by visiting a pub. 793 So.2d at 87. At the revocation hearing, the only evidence offered by the State was the testimony of the deputy who interviewed the victim at the hospital. That deputy testified as to what he was told by the victim about the incident that allegedly occurred at the pub. The State argued that the victim's statements were admissible under the hearsay exception for excited utterances and thus were sufficient to support the revocation. The trial court agreed and revoked Bales' community control. However, this court held that the excited utterance exception did not apply and that the victim's inadmissible hearsay statements were insufficient, standing alone, to support the revocation of Bales' community control. Therefore, this court reversed and remanded for reinstatement of Bales' community control.
In this case, the only evidence presented to establish that Miller tampered with a witness was Steere's testimony concerning what Bocook and T.N.B.'s mother and stepfather had told him during his investigation. Like the officer's hearsay testimony in Bales, Steere's hearsay testimony in this case, standing alone, was insufficient to support a finding that Miller had committed the offense of tampering with a witness, and no nonhearsay evidence was admitted to corroborate the hearsay statements. Accordingly, the evidence presented at the revocation hearing was legally insufficient to support a finding that Miller had committed a new offense, and the trial court erred in revoking Miller's probation on this basis.

Condition Nine
Miller next contends that the trial court erred by revoking his probation based on the allegations that he disobeyed the instructions of his probation officer because those instructions amounted to new conditions of probation that had not been imposed by the court. We agree on this point as well.
There is no question that a probation officer may give a probationer routine supervisory directions that are necessary to carry out the conditions imposed by the trial court. Parissay v. State, 687 So.2d 30, 30 (Fla. 5th DCA 1997). Thus, for example, a probation officer may require a probationer to notify the probation officer when he loses his job because this direction simply effectuates the conditions already imposed by the court. Haynes v. State, 440 So.2d 661, 662 (Fla. 1st DCA 1983).
However, an instruction that essentially imposes a new condition of probation is not a routine supervisory direction and *985 cannot support a finding that the probationer is in violation. Id. For example, in Haynes, the probation officer's instruction forbidding Haynes from going to his wife's house was determined to be a new condition of probation rather than an instruction necessary to carry out the conditions imposed by the court. Therefore, the court reversed the revocation of probation to the extent that it was premised on that alleged violation.
In this case, Miller's probation officer instructed him to stop contacting Bocook by phone, in person, and by mail. This instruction was not a routine supervisory direction necessary to carry out conditions of probation previously imposed on Miller by the trial court. Instead, it was essentially a new condition of probation, like the instruction in Haynes, that had not been imposed by or approved by the court. Accordingly, the trial court erred in revoking Miller's probation on this basis as well.
Because the evidence presented at the revocation hearing was legally insufficient to support a finding that Miller had violated the terms of his probation, the trial court erred in revoking his probation. Accordingly, we reverse the order of revocation and remand for reinstatement of Miller to probation.
Reversed and remanded for reinstatement to probation.
FULMER, C.J., and CASANUEVA, J., Concur.
NOTES
[1] We note that even though Miller was not yet serving his probation in case number 99-607, the trial court could nevertheless revoke that probation upon proper findings. Stafford v. State, 455 So.2d 385, 386-87 (Fla.1984); Hernandez v. State, 889 So.2d 913, 914 n. 2 (Fla. 2d DCA 2004).