2009 OK CR 4

**Jerry Lynn HAMPTON, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. RE–2007–555.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 2009.

An Appeal from the District Court of Pushmataha County; Before the Honorable Gary L. Brock, Special Judge.

Maria Blakely, Hugo, OK, attorney for defendant at trial.

Joe R. Watkins, Assistant District Attorney, attorney for State of Oklahoma at trial.

Bill J. Baze, Okla. Indigent Defense System, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer Miller, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

*OPINION*

CHAPEL, Judge.

¶1 In the District Court of Pushmataha County, Case No. CF–2002–119, Appellant, Jerry Lynn Hampton, entered a plea of nolo contendere to Count 1, Unlawful Possession of Controlled Drug (Methamphetamine); Count 2, Unlawful Possession of Controlled Drug (Methamphetamine); and Count 3, Unlawful Possession of Paraphernalia. The Honorable Lowell Burgess, Jr., Associate District Judge, on March 7, 2003, sentenced Appellant to concurrent terms of five (5) years imprisonment on Counts 1 and 2 and to one (1) year on Count 3. Pursuant to a plea agreement, Judge Burgess suspended execution of these sentences conditioned upon written rules of probation that required Appellant, among other things, not to possess illegal drugs; not to visit places where alcohol or illegal drugs are unlawfully sold, dispensed, or used; and not to violate any city, state, or federal law.

¶2 On March 21, 2007, the State filed an Application to Revoke Suspended Sentence on Counts 1 and 2. This Application alleged that Appellant had violated the above conditions of his probation by having committed the offenses of Attempted Manufacture of a Controlled Dangerous Substance; Unlawful Cultivation of Marijuana; and Unlawful Possession of Controlled Dangerous Substance, all as alleged in Pushmataha District Court Case No. CF–2007–35. The evidentiary hearing on the Application to Revoke was joined with the preliminary hearing on Appellant's new charges. Following that hearing, the Honorable Gary L. Brock, Special Judge, on May 16, 2007, found Appellant violated his probation and revoked a three (3) year, six (6) month portion of the suspension order.

¶3 Appellant now appeals the revocation order and raises the following claims of error:

1. The District Court revoked Appellant's suspended sentence based on hearsay evidence, thereby depriving Appellant of his right of confrontation.

2. The evidence was insufficient to show Appellant violated the terms and conditions of his probation.

## I. Revocation Evidence and the Hearsay Statement at Issue

¶4 The State's only witness at the hearing was a Drug Task Force agent who had executed a search warrant on a five-acre parcel of land where there was situated a house, two sheds, and two camper trailers. An individual named Roger Payne and his common-law wife lived in the house. When the search was performed, the trailer closest to the house was in the front yard about fifty feet away from the house, and the agent located Appellant inside this trailer. About twenty feet from that same trailer, between it and the house, sat one of the sheds. This shed had a doorway but with no door attached.

¶5 The agent testified that inside this open shed was a "mother jar" containing liquid that the OSBI found to be positive for methamphetamine. Outside that same shed, about five feet from its doorway facing the trailer, was a "pump up sprayer that would be converted into an HTL generator to gas off methamphetamine." (Tr. 12.) Poured out onto the ground by this shed was a salt and acid mixture, about 17 to 18 feet from the trailer. The agent testified that there was also found "several boxes of matches, where they ripped the striker plates off" containing red phosphorous. (Tr. 12.) In front of the trailer were "lithium batteries that had been taken apart." (Tr. 12–13.) The agent indicated that all of these items contained materials that could be used in the making of methamphetamine.

¶6 Additionally, the agent noted, "In the shed was some tin foil with methamphetamine residue, appeared to be used to smoke methamphetamine with." (Tr. 17.) On the east side of the house, some potted marijuana plants were growing. The search of the house revealed some pipes, marijuana cigarettes, and drug paraphernalia; however, there were no documents or other items within the house showing that Appellant had ever been inside, but one of Appellant's adult sons and the son's girlfriend were found in

the house at the time the search warrant was executed. Discovered in the second camper trailer during the warrant search, was another adult son of Appellant's.

¶ 7 The hearsay evidence about which Appellant complains concerned Appellant's alleged purchase of a large quantity of matches from a local convenience store. While conducting the investigation that led up to his obtaining the search warrant, the agent was told by store personnel "that a guy by the name of Slick has been coming in with Roger Payne purchasing matches." (Tr. 5–6.) Appellant objected to this statement as hearsay. Appellant further argued that if the trial court were to consider this hearsay statement, it would deprive Appellant of his right of confrontation.

¶ 8 Upon being told by store personnel about the purchase of these matches, the agent watched a video made by the store's surveillance camera revealing Appellant to be the individual making the purchase from the store. When asked on cross-examination how many boxes of matches Appellant bought, the agent stated he did not know how many, but just that they were in "big boxes ... large quantity boxes," and that he could not tell what was in the boxes because "[t]hey are wrapped up in paper" and the video tape was "really blurry." (Tr. 21.)

¶ 9 In making its revocation decision, the District Court relied upon the out-of-court statement by store personnel to conclude that Appellant indeed purchased matches, finding it could consider the statement "because of the provisions allowing hearsay in revocation hearings." (5–15–07 Tr. 3.) The District Court therefore concluded that Appellant violated his probation by having attempted to manufacture a controlled dangerous substance and by possessing methamphetamine. The District Court further concluded, however, that it could not consider the store personnel statement for purposes of the preliminary hearing because it was hearsay. Believing that without the hearsay statement there was insufficient evidence of probable cause, the District Court declined to hold Appellant for trial on the new charges.

## II. Analysis of Appellant's Hearsay and Confrontation Claim

¶ 10 In appeals from revocation proceedings, we review for any abuse of discretion in the trial court's evidentiary rulings that are preserved on appeal.[1] Additionally, when properly raised on appeal, we determine if statutory and constitutional requirements have been satisfied.[2]

¶ 11 Procedures for revoking a suspended sentence are established in 22 O.S.Supp.2008, § 991b.[3] That statute requires the State,

---

1. See Gilbert v. State, 1988 OK CR 283, ¶ 12, 765 P.2d 807, 809 (finding no abuse of discretion in trial court admitting preliminary hearing transcript into evidence at revocation hearing).

2. E.g., Baker v. State, 1996 OK CR 49, ¶¶ 12–20, 927 P.2d 577, 581–83 (in revocation appeal, Court reviewed for compliance with revocation statute's requirement of a hearing within twenty days of defendant's not guilty plea to the revocation petition and whether statutory revocation procedure satisfied federal due process requirements); Painter v. State, 1988 OK CR 224, ¶¶ 6–12, 762 P.2d 990, 992 (Court found defendant had waived his statutory right to be represented by counsel at his revocation hearing by failing to timely secure counsel); Cooper v. State, 1979 OK CR 85, ¶ 16, 599 P.2d 419, 423 ("it is within the jurisdiction of this Court to reverse revocation orders not supported by competent evidence"). C.f. Beller v. State, 1979 OK CR 64, ¶ 4, 597 P.2d 338, 339 (finding "all the requirements of due process were met" in proceedings accelerating deferred sentencing).

3. Section 991b has been twice amended since the August 23, 2002, offenses for which Appellant was placed on probation. As the changes made to the statute by those amendments do not have any bearing on the issues raised in this appeal, we cite to the current version of Section 991b, which, in relevant part, states:

   A. Whenever a sentence has been suspended by the court after conviction of a person for any crime, the suspended sentence of the person may not be revoked, in whole or part, for any cause unless a petition setting forth the grounds for such revocation is filed by the district attorney with the clerk of the sentencing court and competent evidence justifying the revocation of the suspended sentence is presented to the court at a hearing to be held for that purpose within twenty (20) days after the entry of the plea of not guilty to the petition, unless waived by both the state and the defendant.....

   ....

   D..... The person whose suspended sentence is being considered for revocation at the

among other things, to present "competent evidence justifying the revocation of the suspended sentence."[4] Additionally, the statute provides that a defendant "being considered for revocation at the hearing shall have the right to be represented by counsel, to present competent evidence in his or her own behalf and to be confronted by the witnesses against the defendant."[5] These rights and requirements predate this state's 1978 adoption of the Oklahoma Evidence Code, and they have been a part of Section 991b since it was first enacted in 1969.[6]

¶ 12 Revocation procedures are also guided by two leading U.S. Supreme Court cases: *Morrissey v. Brewer*[7] and *Gagnon v. Scarpelli.*[8] In 1972, *Morrissey* established minimum due process standards for terminating parole,[9] and in the following year, *Scarpelli* adopted those same standards for terminating individuals from probation under a suspended sentence.[10] One of the minimum due process standards identified by the Supreme

Court in those decisions was "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."[11]

■ ¶ 13 This Court now concludes that the statutory right "to be confronted by the witnesses against the defendant," granted to probationers under Section 991b, is of no greater scope than that right of confrontation and cross-examination existing under *Morrissey* and *Scarpelli.* This conclusion finds support from this Court's recent decision in *Wortham v. State.*[12]

■ ¶ 14 In *Wortham,* the Court found that a probationer's right of confrontation is not the same as that granted defendants under the Sixth Amendment of the U.S. Constitution in criminal prosecutions, but it is instead a right that arises from due process considerations.[13] Accordingly, a probation-

---

hearing shall have the right to be represented by counsel, to present competent evidence in his or her own behalf and to be confronted by the witnesses against the defendant.
22 O.S.Supp.2008, § 991b.

4. 22 O.S.Supp.2008, § 991b(A).

5. 22 O.S.Supp.2008, § 991b(D).

6. From its inception, Section 991b has provided:
[T]he suspended sentence of said person may not be revoked for any cause unless competent evidence justifying the revocation of said suspended sentence is presented to the court at a hearing to be held for that purpose. The person whose suspended sentence is being considered for revocation at said hearing shall have the right to be represented by counsel, to present competent evidence in his own behalf and to be confronted by the witnesses against him.
22 O.S.Supp.1969, § 991b.

7. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

8. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

9. *Morrissey,* 408 U.S. at 488–89, 92 S.Ct. at 2604 (listing the minimum requirements of due process in parole revocations).

10. *Scarpelli,* 411 U.S. at 782, 93 S.Ct. at 1760 (finding that a probationer is entitled to a revocation hearing under the conditions specified in *Morrissey*); *Pickens v. State,* 1989 OK CR 58, ¶ 8,

779 P.2d 596, 598 ("The [*Scarpelli*] Court relied heavily on the *Morrissey* decision to conclude the due process rights of a probationer are the same as those of a parolee.")

11. *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604; *Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1762.

12. *Wortham v. State,* 2008 OK CR 18, 188 P.3d 201 (Okl.Cr. June 19, 2008).

13. *Wortham,* ¶¶ 11–13, 188 P.3d at 205–06. In *Wortham,* the Court concluded that when a defendant had been allowed to confront and cross-examine witnesses at a preliminary hearing on new criminal charges filed against him, the transcript from that preliminary hearing could be lawfully admitted as evidence against that defendant at a subsequent probation revocation hearing in order to prove the defendant violated his probation by committing the new offenses, and that the State was not required to prove the unavailability of the preliminary hearing witnesses in order to introduce the transcript into evidence at the revocation. *Id.,* ¶¶ 15–16, 188 P.3d at 206. I dissented to the decision in *Wortham,* noting that the U.S. Supreme Court had held that the Fourteenth Amendment gives a right of confrontation in revocation cases unless there is a specific finding of good cause for refusing the right, and that the trial judge had made no such finding. I further dissented on the basis that Oklahoma had its own statute granting a right of confrontation. I therefore believed it was unnecessary for the majority to explore whether the right of confrontation in revocation

er's right of confrontation is subject to "relaxed due process standards" that may

> permit introduction of evidence such as "letters, affidavits, and other material that would not be admissible in an adversary criminal trial," *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, and do not "prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 5, 93 S.Ct. 1756, 1760 n. 5, 36 L.Ed.2d 656 (1973).

*Gilbert v. State*, 1988 OK CR 283, ¶ 10, 765 P.2d 807, 809.

■ ¶ 15 It therefore follows that a probationer's right of confrontation and cross-examination is not absolute, and that there are instances in revocation proceedings when a trial court, consistent with due process, can allow evidence of an out-of-court statement without the declarant being present for cross-examination. This Court, however, has not published a decision precisely addressing how a trial judge in such proceedings is to protect a probationer's due process right of confrontation when the State has found it necessary to proffer an out-of-court statement. The unique circumstances in Appellant's case call our attention to that issue, and as this Court has not heretofore directly addressed this problem, we have looked to the decisions of other jurisdictions that have. Upon doing so, we have found courts are divided upon the procedures for determining when an out-of-court statement is admissible in a probation revocation hearing.

¶ 16 In a recent case arising in Indiana, the Supreme Court of that state observed:

> Courts have adopted two principal approaches to evaluating hearsay evidence in probation revocation hearings. In one, the trial court employs a balancing test that weighs the probationer's interest in confronting a witness against the interests of the State in not producing the witness. In the balancing test, the State is required to show good cause for denying confrontation. In another test, the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness.

*Reyes v. State*, 868 N.E.2d 438, 441 (Ind. 2007) (citations omitted).

¶ 17 In *Reyes*, the Indiana Supreme Court found "the substantial trustworthiness test the more effective means for determining the hearsay evidence that should be admitted at a probation revocation hearing," and adopted the substantial trustworthiness test for its jurisdiction. *Id.* In rejecting the balancing test approach in favor of the trustworthiness test, the Indiana Supreme Court observed:

> [T]he need for flexibility combined with the potentially onerous consequences of mandating a balancing inquiry for every piece of hearsay evidence in every probation revocation hearing in Indiana weighs strongly in favor of the substantial trustworthiness test over a balancing test.... [W]e see no reason to require that the State expend its resources to demonstrate that its interest in not producing the declarant outweighs the probationer's interest in confronting the same every time it seeks to admit reliable hearsay evidence in a routine probation revocation hearing or, if the State fails the balancing test, expend its resources to produce a witness (or indeed to require that witness to expend his or her time) to give routine testimony in that routine probation revocation hearing, when a reliable piece of hearsay evidence is available as a substitute.

> The substantial trustworthiness test also provides a clearer standard. A balancing test in which a trial court weighs the probationer's interest in confrontation against the State's good cause for not producing a witness is too unwieldy a method for everyday use in a proceeding as common as a probation revocation hearing. The substantial trustworthiness test requires that the trial court evaluate the reliability of

cases was the same as that right of confrontation identified in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), under the Sixth Amendment. *Id.*, ¶ 2, 188 P.3d at 207 (Chapel, J., dissenting). In the present case, however, the scope of the state statute granting the right of confrontation is squarely before the Court, and I shall concede to the relevant holdings in *Wortham* as a matter of stare decisis.

the hearsay evidence. Once that determination is made, we find it superfluous for a court to have to assess the relative weight of every reason the State might not care to produce a witness.

Therefore, rather than require that a court make an explicit finding of good cause every time hearsay evidence is admitted during a probation revocation hearing, we hold that the court may instead evaluate the hearsay's substantial trustworthiness. .... If the test of substantial trustworthiness of hearsay evidence is met, a finding of good cause has also implicitly been made.

*Reyes*, 868 N.E.2d at 441–42. Hence, *Reyes* found, "[T]he substantial trustworthiness test implicitly incorporates good cause into its calculus." *Id.* at 441.

¶ 18 For these same reasons, we hold the substantial trustworthiness test is a procedure upon which Oklahoma trial judges may rely in deciding when hearsay evidence can be considered over an objection to a probationer's right of confrontation.[14] Accordingly, we conclude that the due process confron-

tation requirement applicable to revocations matters will generally be satisfied when a trial court determines that proffered hearsay bears substantial guarantees of trustworthiness or otherwise has sufficient indicia of reliability.

¶ 19 In Appellant's matter, the out-of-court statement concerning his purchase of matches was evidence meeting this test, as it was corroborated by evidence from the personal observations of the witness who testified at the revocation hearing. That out-of-court statement found verification from the investigating agent's viewing of the store's video tape, the agent's subsequent discovery of matchboxes with missing striker plates lying outside Appellant's trailer, and the finding of nearby methamphetamine manufacturing paraphernalia consistent with the need for a large quantity of matches. Because the out-of-court statement about Appellant buying matches, objected to on hearsay/confrontation grounds, bore substantial guarantees of trustworthiness, it was not error for the District Court to rely on it in revoking Appellant's suspended sentence.[15]

14. As an additional reason for not requiring use of the balancing test, the *Reyes* court noted that the U.S. Seventh Circuit Court of Appeals (the circuit in which Indiana is located) "has held that once 'substantial guarantees of trustworthiness' for hearsay evidence are shown, there is no longer a need to show good cause. Substantial trustworthiness is the equivalent of a good cause finding in this context." *Reyes*, 868 N.E.2d at 441 (citations omitted). Similarly, we note our Tenth Circuit Court of Appeals has not required the balancing test where the challenged hearsay "contained sufficient indicia of reliability." *See Kell v. U.S. Parole Comm'n*, 26 F.3d 1016, 1019–20 (10th Cir.1994) (where parolee raised "due process claim that he was not allowed to confront his parole officer at his [parole] revocation hearing," court held claim should be denied, in part, because the lower court had correctly found the "parole officer's reports contain sufficient indicia of reliability to be appropriate substitutes for live testimony").

15. *United States v. Kelley*, 446 F.3d 688 (7th Cir.2006), provides a further illustration of circumstances where hearsay evidence in a revocation proceeding was found to satisfy due process confrontation concerns due to corroborative evidence in the record that gave the hearsay substantial guarantees of trustworthiness. In *Kelley*, the defendant, Lamond Kelley, was revoked from supervised release for having committed battery, aggravated assault, and unlawful use of a weap-

on. The district court found Kelley committed these offenses based solely on evidence presented by the police officer who responded to a police dispatch about "a man with a gun." The officer testified that upon his arriving at the scene he found Kelley, Kelley's brother, and the two victims of the assault. Over Kelley's hearsay objection, the officer testified to what the victims had told him about their altercation with Kelley and his brother, and that when the brother began punching them, Kelley produced a black, .22–caliber rifle from the trunk of a nearby car. The officer further testified that he observed injuries on one of the victims, found a black, loaded, .22–caliber rifle in the trunk of the car, and learned that car was registered to Kelley. *Kelley*, 446 F.3d at 689–90.

In responding to Kelley's claim that admission of the victims' hearsay statements violated his due process right of confrontation, the Seventh Circuit observed, "The physical evidence and the officer's personal observations and investigation corroborated the [victims'] accusations that Kelley punched them in the face and confronted them with a rifle that he produced from the trunk of his car." The appellate court therefore found that the hearsay evidence "bore substantial indicia of reliability so that its admission was not fundamentally unfair." *Id.* at 692. Although concluding that "the district court ideally should have explained on the record why the hearsay was reliable and why that reliability was substan-

¶ 20 Today we also hold that an out-of-court statement will presumptively satisfy the confrontation rights of a probationer when that statement is one that would normally be admissible under an established exception to the rules against hearsay.[16] While the rules of evidence in Oklahoma (as well as those rules of evidence found in the federal system and many other jurisdictions), contain provisions declaring such rules inapplicable to probation revocation proceedings,[17] courts in such jurisdictions have found that an out-of-court statement satisfies the due process confrontation requirement when that out-of-court statement is one falling under a long-standing exception to the rules against hearsay.[18]

¶ 21 Although concluding that in revocation proceedings, a trial court may rely upon an out-of-court statement that bears substantial guarantees of trustworthiness without violating a defendant's right of confrontation, we continue to hold to that authority indicating revocation cannot be based entirely upon hearsay evidence.[19] This is

---

tial enough to supply good cause for not producing the [victims] as live witnesses," *Id.* at 693; the Seventh Circuit held:

> Where hearsay evidence sought to be admitted at a revocation hearing "bears substantial guarantees of trust-worthiness, then the need to show good cause vanishes." This circuit essentially treats a finding of "substantial trustworthiness" as the equivalent of a good cause finding for the admission of hearsay in the revocation context.

*Id.* at 692 (citations omitted).

16. In Appellant's matter, the State does not contend that the out-of-court statement at issue falls under such an exception.

17. Rule 1101(d)(3) of the Federal Rules of Evidence states those rules "do not apply in ... [p]roceedings for ... revoking probation." Oklahoma's corresponding provision is found at 12 O.S.Supp.2008, § 2103(B)(2). With the exception of Kansas, the rules of evidence in all other states situated in the Tenth Circuit have similar exclusionary provisions. Colo. R. Evid. 1101(d)(3); N.M. R. Evid. 11–1101(D)(2); Utah R. Evid. 1101(b)(3); Wyo. R. Evid. 1101(b)(3); *c.f.* Kan. Stat. Ann. § 60–402 (2005) (declaring that the Kansas Rules of Evidence "apply in every [court] proceeding ... in which evidence is produced" except where the rules "may be relaxed by other procedural rule or statute applicable to the specific situation"). Although Wyoming's Rules of Evidence contain the standard exclusion for proceedings revoking probation, a special provision within that state's Rules of Criminal Procedure declare that its Rules of Evidence do "apply to the adjudicative phase of probation revocation hearings." Wyo. R.Crim. P. 39(a)(5)(B).

18. *E.g., United States v. Williams*, 443 F.3d 35, 45 (2d Cir.2006) (in revocation of supervised release, district court was not obliged to perform a good-cause analysis for denying confrontation where the proffered out-of-court statement is one that would be admissible under an established exception to the hearsay rule); *United States v. Hall*, 419 F.3d 980, 987 (9th Cir.2005) ("Although the Federal Rules of Evidence do not strictly apply to revocation hearings, ... long-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding."); *State v. Nez*, 130 Idaho 950, 950 P.2d 1289, 1292, 1294 (Ct.App.1997) (conceding "Idaho Rules of Evidence do not apply to a probation revocation proceeding," but finding that the "[a]dmission of a statement, pursuant to a firmly rooted hearsay exception, satisfies the constitutional requirement of reliability"); *State v. James*, 797 A.2d 732, 735–36 (Me. 2002) (noting that "the Maine Rules of Evidence do not apply to probation revocation hearings" but finding that "[t]he first step in analyzing the reliability of proffered [hearsay] evidence is to determine whether the evidence would be admissible under the rules of evidence" because evidence "admissible under standard evidentiary rules is presumptively reliable"); *State ex rel. Simpson v. Schwarz*, 250 Wis.2d 214, 640 N.W.2d 527, 535 & n. 5 (Ct.App.2001) (although recognizing that "neither the Rules [of Evidence] nor the Sixth Amendment apply at revocation hearings," court found it need not determine "the contours of the good cause requirement, because we conclude that the test is always met when the evidence offered in lieu of an adverse witness's live testimony would be admissible under the Wisconsin Rules of Evidence"). *See also United States v. Palmer*, 463 F.Supp.2d 551, 555 (E.D.Va.2006) (acknowledging that the rules of evidence do not apply to probation revocation hearings, but finding that "the hearsay exceptions contained in those rules serves as a useful proxy for the reliability of evidence" making the balancing analysis inapplicable to out-of-court statements falling within an established hearsay exception, and conversely finding the balancing test proper where the "Rules of Evidence implicitly question the reliability of a type of evidence by excluding it from the hearsay exceptions").

19. *Montemayor v. State*, 1988 OK CR 285, ¶¶ 2–4, 766 P.2d 1000, 1001 (reversing revocation order where only evidence of defendant's probation violation came from information contained in a violation report compiled by defendant's probation officer who did not appear and testify).

also consistent with the requirement of Section 991b that the State present "competent evidence justifying the revocation of the suspended sentence." [20] Moreover, we keep in mind that the overarching concept embodied in the due process mandated for probation revocation hearings is that of fundamental fairness.[21] Appellant has not demonstrated that the District Court's partial reliance on that out-of-court statement in his particular case ultimately resulted in an unfair revocation proceeding.[22]

Other states similarly conclude that a revocation of probation will not stand when based entirely on hearsay. *E.g., Hall v. State,* 964 So.2d 91, 94 (Ala.Crim.App.2007) ("Because, hearsay testimony cannot form the sole basis for revocation of probation, the trial court erred when it revoked Hall's probation."); *Collins v. State,* 897 A.2d 159, 160 (Del.2006) ("we hold that hearsay evidence connecting a probationer to a crime is insufficient to support a revocation of probation"); *Miller v. State,* 958 So.2d 981, 984 (Fla. Dist.Ct.App.2007) ("Although hearsay evidence is generally admissible at a revocation hearing, a revocation of probation may not be based solely on hearsay evidence."); *People v. Spragis,* 5 A.D.3d 814, 772 N.Y.S.2d 628, 628 (N.Y.App.Div. 2004) ("To be sure, hearsay evidence, standing alone, is insufficient to prove a violation of probation, but it is admissible in a probation violation hearing and may be considered with other evidence."); *State v. Ohly,* 166 Ohio App.3d 808, 853 N.E.2d 675, 683 (2006) ("Hearsay is admissible in a probation-revocation hearing; however, courts have held that when it is the only evidence of a violation, it is insufficient and violates the probationer's due process right to confront the witnesses against him.")

**20.** Historically hearsay has not been considered "competent evidence" in formal judicial proceedings. *See Lessee of Scott v. Ratliffe,* 30 U.S. (5 Pet.) 81, 86, 8 L.Ed. 54, 55–56 (1831) (finding "the general rule excluding hearsay testimony" is " 'that hearsay evidence is incompetent to establish any *specific* fact, which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge' "); *In re Porter's Estate,* 208 Okla. 475, 477, 257 P.2d 517, 519 (1953) (holding that the objection "incompetent, irrelevant, and immaterial" raises the question of hearsay); *Strong v. State,* 81 Okl.Cr. 263, 263, 163 P.2d 242, 242 (1945) (Syllabus) ("Opinions of the writer of a letter addressed to a third party come within the rule of hearsay evidence, and are incompetent as such."); *Seigler v. State,* 54 Okl.Cr. 141, 143, 15 P.2d 1048, 1048–49 (1932) (finding testimony by a third person about certain conversations between a husband and wife would be "incompetent" as being hearsay and a privileged communication). We decline, however, to construe the phrase "competent evidence" as used in Section 991b to prohibit the admission of hearsay in revocation proceedings once confrontation issues, if any, are addressed. Nonetheless, as the court in *Reyes* noted, "This does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes,* 868 N.E.2d at 440.

Similarly, in responding to an argument that *Morrissey* did not clearly require exclusion of hearsay evidence at parole revocation hearings, the Fifth Circuit Court of Appeals observed, "To read statements concerning informality of procedure and rules of evidence as a license to circumvent the parolee's right of confrontation, however, is to completely ignore the letter and spirit of *Morrissey.*" *Farrish v. Miss. State Parole Bd.,* 836 F.2d 969, 978 (5th Cir.1988). The Fifth Circuit further recognized, "The use of hearsay presents a two-fold problem: it prevents the parolee from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the fact-finding process." *Id.*

**21.** *In re Collyar,* 1970 OK CR 48, ¶ 15, 476 P.2d 354, 358 ("[W]e do not hold that a person, whose suspended sentence is being revoked, is entitled to receive the full scope of constitutional due process at the hearing on an application to revoke; but we do believe that such hearing should reflect fundamental considerations of fairness."). *See also Scarpelli,* 411 U.S. at 790, 93 S.Ct. at 1763 ("fundamental fairness—the touchstone of due process"); *Kelley,* 446 F.3d at 693 ("In light of the officer's independent corroboration, the admission of the [victims'] hearsay statements did not undermine the fundamental fairness of Kelley's revocation hearing and did not violate his right to due process.").

**22.** We note that in *Bourland v. State,* 1993 OK CR 14, ¶ 4, 848 P.2d 580, 581, this Court recognized that inherent in "the due process requirements to which a defendant is entitled in the matters of acceleration hearings" was the right "to competently prepare his defense and to ensure a fundamentally fair hearing." This Court therefore concluded that a probationer was entitled to discovery on an application to accelerate a deferred sentence. *Id.* Where discovery has occurred, the discovery materials may reveal that there was given that adequate notice and opportunity necessary to rebut hearsay and to satisfy due process confrontation requirements. *See Kell,* 26 F.3d at 1019 (where parolee claimed due process right of confrontation had been violated in parole revocation hearing, Tenth Circuit disposed of such claim, in part, by finding, "The record shows that petitioner was informed of this [confrontation] right, yet he chose not to request the presence of adverse witnesses when given the opportunity.").

In Appellant's matter, we note that he never denied purchasing the matches nor did he ask for a continuance so that he might have a further opportunity to call the individual making the out-of-court statement or so that he might present

### III. Conclusion

¶ 22 In *Chase v. Page*, this Court set out minimum due process procedures for parole revocations in Oklahoma.[23] Favorably quoting the holding in *Chase* that "principles of fundamental justice and fairness" required those procedures, the U.S. Supreme Court in *Morrissey* identified the goal it wished to reach through those due process guidelines it was adopting: "What is needed is an informal hearing structured to assure that the finding of a parole violation *will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.*"[24]

¶ 23 At Appellant's revocation hearing, the out-of-court statement partly relied upon for accurate knowledge of Appellant's behavior while on probation was verified by other evidence before the trial court. Because that out-of-court statement had substantial guarantees of trustworthiness, the good cause necessary to meet the confrontation requirements of *Morrissey, Scarpelli*, and Section 991b was present, and therefore it was not error for the District Court to rely on it. For this reason, there was sufficient competent evidence revealing Appellant violated his probation and that the violation justified partial revocation.

### DECISION

¶ 24 The May 16, 2007, final order of the District Court of Pushmataha County, revoking a three (3) year, six (6) month portion of the suspended sentences of JERRY LYNN HAMPTON in Case No. CF–2002–119, is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008), **MANDATE IS ORDERED ISSUED** upon the filing of this decision.

LUMPKIN, P.J. concur in part/dissent in part.

C. JOHNSON, V.P.J., A. JOHNSON, and LEWIS, JJ.: concur.

---

LUMPKIN, Judge: concur in part/dissent in part.

¶ 1 I agree with the results reached by the Court in this case and join in the adoption of the substantial trustworthiness test to govern the admissibility of hearsay evidence in revocation cases. However, I have always believed appellate courts should be clear and consistent in establishing guidelines for the judges of the District Court and this Court's analysis appears to create more questions than it answers.

¶ 2 First, the Court correctly sets out the fact that a "probationer's right of confrontation is subject to 'relaxed due process standards' ", and notes the evolution of the law emanating from the U.S. Supreme Court decisions in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which leads to our ability to say:

> Accordingly, we conclude that the due process confrontation requirement applicable to revocations matters will generally be satisfied when a trial court determines that proffered hearsay bears substantial guarantees of trustworthiness or otherwise has sufficient indicia of reliability.

That holding is clear and to the point, easy to understand.

¶ 3 Second, the Court then becomes somewhat cryptic in the application of that clear statement by citing to the case of *United States v. Kelley*, 446 F.3d 688 (7th Cir.2006) as an example of the application of the rule. That decision found a defendant guilty "based solely on evidence presented by the police officer who responded to a police dispatch about 'a man with a gun'." *Id.*, at 689. That court discussed the reliability of the hearsay in the context of "the officer's personal observations and investigation corrobo-

---

evidence contradicting the truth of the matter asserted. Other than simply to argue that the statement was hearsay, he did not seek to challenge its reliability in any meaningful way, and there is nothing in the record showing he was not given a full and fair opportunity to offer up such a challenge.

**23.** *Chase v. Page*, 1969 OK CR 196, ¶¶ 17–19, 456 P.2d 590, 594–95 (per curiam).

**24.** *Morrissey*, 408 U.S. at 484 & n. 12, 92 S.Ct. at 2602 & n. 12 (emphasis added).

rated the victims' accusations". However, the case does not say corroboration is required to satisfy the "substantial guarantees of trustworthiness test". The Court refers to "corroboration" several times in the opinion without stating whether or not it is required to satisfy the test. If it is required, we should say so and if the examples are merely illustrative of how a trial court can determine whether proffered hearsay evidence meets the test requirements, then we should be clear to ensure trial judges do not have to guess when confronted with the argument.

¶ 4 Third, this Court then creates conflict and confusion by referring to *Montemayor v. State,* 1988 OK CR 285, 766 P.2d 1000, and holding:

> Although concluding that in revocation proceedings, a trial court may rely upon an out-of-court statement that bears substantial guarantees of trustworthiness without violating a defendant's right of confrontation, we continue to hold to that authority indicating revocation cannot be based entirely upon hearsay evidence.

¶ 5 The problem with this statement is that *Montemayor* was based entirely on the application of the U.S. Supreme Court decisions in *Morrissey v. Brewer* and *Gagnon v. Scarpelli.* The Court's analysis and adoption of the substantial trustworthiness test completely eviscerates the basis for the decision in *Montemayor.* For that reason, we should be overruling *Montemayor* and not confusing the application of the test we are adopting.

¶ 6 Fourth, 20 further confuses the application of the substantial trustworthiness test by its discussion of competent evidence. Like the reference back to *Montemayor,* this discussion of competent evidence places a cloud on the extent to which the test is applicable in the trial court proceedings. While I continue to adhere to the rule of law that statements in footnotes are not holdings in an opinion, *see Jackson v. State,* 2006 OK CR 45, 146 P.3d 1149, 1168 (Lumpkin, V.P.J. Concur In Results); *Cannon v. State,* 1995 OK CR 45, 904 P.2d 89, 108 (Lumpkin, J., Concur in Results) people do read them and they should at least be consistent with the holding of the opinion. Supposedly, the Court is holding that the substantial trustworthiness test is satisfying the confrontation requirements imposed in revocation proceedings, but this discussion on competent evidence conflicts with that holding.

¶ 7 Rather than sending mixed signals to judges and practitioners as to how and when hearsay evidence is admissible in revocation proceedings, we should be clear and to the point. We should state affirmatively that hearsay evidence meeting the substantial trustworthiness test satisfies a probationer's due process confrontation rights in a revocation proceeding. We should provide examples that show the ways that reliability can be established, whether it be through corroboration, observation or traditional hearsay exception. And, due to the evolution of the *Morrissey v. Brewer* and *Gagnon v. Scarpelli* jurisprudence, that due process is satisfied if a decision to revoke is based solely on competent hearsay evidence that satisfies the substantial trustworthiness test. In other words, we should do it right the first time rather than creating questions that will have to be decided in later appeals.